480 So.2d 470 (1985)
Donald C. OSTER, Jr.
v.
Vicki Fonte OSTER.
No. 85-CA-60.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1985.
Writ Denied February 7, 1986.
*471 Michael A. McNulty, Jr., John A. Hollister, New Orleans, for defendant-appellant.
George P. Vedros, Gretna, for plaintiff-appellee.
Before CHEHARDY, GAUDIN and GRISBAUM, JJ.
GAUDIN, Judge.
This is an appeal by Mrs. Vicki Oster, found guilty in a separation proceeding in the 24th Judicial District Court of cruel treatment toward her husband, Donald C. Oster, Jr. Appellant's primary contention is that the allegations of Mr. Oster and the proof submitted by him were not sufficient to constitute fault within the scope and meaning of LSA-C.C. art. 138. For the following reasons, we agree with Mrs. Oster.
The Osters were married on May 25, 1968 and are the parents of three children, Carolyn (now aged 15), Matthew (12) and Steven (eight). When Mr. Oster left the matrimonial domicile on July 26, 1983, the departure came as a complete surprise to Mrs. Oster, she said.
In his petition for separation, filed September 7, 1983, Mr. Oster contended that "... as of ... July 26, 1983, and for a long period of time prior thereto, defendant (Mrs. Oster) had subjected your petitioner to constant mental cruelty ... by repeatedly insisting to him that he no longer loved her if he did not do everything that she insisted of him ..." Mr. Oster said that he is "... no longer able to endure this treatment..." The petition does not recite any other turpitude on Mrs. Oster's part.
Mrs. Oster answered on September 23, 1983. She denied Mr. Oster's assertions and further stated that she had been a dutiful and faithful wife and that Mr. Oster had nonetheless abandoned her "... and has since expressed his intention not to return."
In a supplemental answer, Mrs. Oster said that Mr. Oster had returned to the matrimonial domicile and that he had "... became angry at and verbally abused the defendant ... shouting at her loudly and calling her various unpleasant names ..." Mrs. Oster alleged that Mr. Oster had "... physically abused ..." her by "... grabbing her roughly, kicking her and hitting her ..." On May 1, 1984, the district judge signed a temporary restraining order directing Mr. Oster "... to refrain from abusing, harrassing or interferring with..." Mrs. Oster. Subsequently, a mutually beneficial consent judgment was entered into.
The merits of the separation suit were heard on June 20, 1984, whereat Mr. and Mrs. Oster and three others testified. Mr. Oster described various happenings during his 15-year union with Mrs. Oster which he felt justified his leaving the matrimonial home. Mr. Oster did not suggest that his wife had been unfaithful or that she hadn't been a good mother, instead he said that Mrs. Oster didn't allow him sufficient freedom and that she felt that "... you should be a couple 100 per cent of the time ..." When she didn't get her way, Mr. Oster said, his wife would pout and "go on for days ... without talking to him ..." and that she sometimes refused to have sex with him as a form of punishment. He also testified about such isolated things as Mrs. Oster refusing to go to a church barbeque because he had played golf earlier that day. Another time, Mr. Oster said, his wife was upset when an uninvited guest arrived for Sunday dinner. Also, Mr. Oster testified that Mrs. Oster once became angry because he was going to Manresa for a retreat.
Mrs. Oster gave her side of the story, which seemed as creditable as Mr. Oster's *472 version. Generally, her testimony was contrary to his, and she denied refusing to have sex with Mr. Oster as a means of punishing him. She stated:
"There were times we did not have sex after differences of opinion, but it was not because Don approached me for sex and I told him no. I love my husband. Why would I tell him no?"
Regarding the Manresa incident, Mrs. Oster gave this explanation:
"... I was sick and I asked Don would he please not go on the retreat that year, that he could stay home with the children ..."
Later, Mrs. Oster said that she was not usually opposed to Mr. Oster's Manresa visits. She said:
"I think everyone deserves to get away by themselves once in a while just to get their thoughts together and to reflect where they are and where they have been. I make retreats. I don't see why Don shouldn't make retreats."
The record reflects the fact that the Oster marriage had some problems and that the couple sought outside assistance, to no avail. The record does not, however, indicate that Mrs. Oster was responsible for the breakup, and the trial judge's finding in this regard is clearly wrong.
Mr. Oster continued to reside with his wife after each of the incidents he described, and in a sense he legally condoned most if not all of the things he later objected to. In any event, in July of 1983, Mr. Oster apparently became unwilling to deal further with the perplexities of his marriage, and he left. No single incident sparked his exit.
We realize that a series of incidents can lay the foundation for a departure by one spouse or the other, as in Manley v. Manley, 188 So.2d 194 (La.App. 2nd Cir.1966), cited by Mr. Oster. The husband's activities in Manley, however, were outrageous and in no way relevant to the instant case. From Manley:
"The record reflects a gradual deterioration of the marital relationship between these parties over the past several years. Some four or five years prior to institution of this action, defendant completely withdrew himself from the normal husband-and-wife relationship. He showed her no affection. His attitude toward her was one of resentment and, at times, even belligerence. For the past three years he refused to eat his meals at home. When in the city he would only sleep at home, leave early in the morning, return in the afternoon, leave again without his night meal, and return about 10:00 or 11:00 p.m. When leaving the city, as his work often required that he do, he would give his wife no information where he was going, where he could be reached, how long he would be gone, or when he would return. For two or three years immediately preceding their separation, defendant refused to speak to his wife, using their son as an intermediary to deliver messages."
While abrasive behavior can give an offended spouse the right to leave, mere friction, dissatisfaction or incompatibility, no matter how intense, is not enough to justify a withdrawal from the common dwelling. See Quinn v. Quinn, 412 So.2d 649 (La.App. 2nd Cir.1982), and numerous cases cited therein.
The Supreme Court of Louisiana, in Pearce v. Pearce, 348 So.2d 75 (La.1977), stated:
"To constitute fault, a wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation."
As each domestic case is different in at least some respects from all others, every case's facts and circumstances must be separately evaluated by the courts. Here, the brief submitted on behalf of Mrs. Oster to this Court states that Mr. Oster's testimony "... amounted to no more than a tedious and rather juvenile recitation of bickering and incompatibility." More truly, we think, Mr. Oster's testimony was that of a person who, in his own mind, found his marriage too inharmonious and unbearable to sustain. We do not say that a person in *473 such an unhealthy frame of mind should stay with his or her spouse, but we are saying that if a husband (or a wife, for that matter) finds flaws in his union or in his mate and he withdraws, he does so at his peril unless, as proclaimed in Pearce, his wife's transgressions are grave enough to be objectively considered an independent contributory or proximate cause of his defection. Mrs. Oster's alleged wrongdoings do not fall into this category.
This is not a case of the trial judge believing Mr. Oster and not Mrs. Oster. It is a case of a wife being deprived of alimony after an extended marriage and three children because of legally insubstantial and mostly uncorroborated "faults" testified to by her husband.
This appeal concerns only the correctness of the separation decree rendered in Mr. Oster's favor. The June 21, 1984 judgment, which cast Mrs. Oster at fault, is hereby reversed and set aside and we remand this matter to the district court for further proceedings consistent with the views herein expressed. If Mrs. Oster is in need and otherwise qualified, she can file a motion asking for permanent alimony.
The voiding of the separation judgment in no way involves the validity of the subsequent divorce decree, which was signed on January 7, 1985 and which was based on the Osters having lived apart continuously for a period of time in excess of one year without reconciliation.
Appellee is to bear all costs of this appeal.
REVERSED AND REMANDED.