490 So.2d 434 (1986)
Mario A. SANCHEZ
v.
Carmen S. SANCHEZ.
Carmen Sauri SANCHEZ
v.
Dr. Mario A. SANCHEZ.
Nos. 85-CA-746, 85-CA-747.
Court of Appeal of Louisiana, Fifth Circuit.
June 2, 1986.
*435 Robert C. Lowe, New Orleans, for plaintiff-appellant.
William W. Hall, Metarie, for plaintiff-appellee.
Before GAUDIN, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
In this domestic litigation Mario Sanchez, M.D., appeals a judgment which awarded his wife, Carmen Sanchez a separation on the basis of mental cruel treatment, and found her free from fault.
Dr. Sanchez and Mrs. Sanchez were married on June 16, 1973. It was the second marriage for Dr. Sanchez who had two children from his first marriage and three children from the second union.
The record reveals that Dr. Sanchez's second marriage was a tempestuous union. The couple physically separated in August of 1979, but reconciled one year later in 1980, only to again separate in April of 1984, which subsequently formed the basis of this litigation. The parties sought marriage counseling at the time of the first separation and had again sought counseling at the time of the second separation.
On April 27, 1984, Dr. Sanchez filed a petition for separation on the grounds that his wife treated him cruelly.
Mrs. Sanchez filed against her husband asserting mental cruelty and abandonment of the matrimonial domicile on April 17, 1984. Dr. Sanchez filed an amended petition, and in responding Mrs. Sanchez alleged that her husband was conducting an open and flagrant relationship with another woman.
Accordingly, both parties asserted the other was guilty of mental cruelty, however in his deposition, Dr. Sanchez admitted post-physical separation fault. Dr. Sanchez acknowledged that he committed acts of sexual intercourse with a Ms. Gremillion. Consequently, since Dr. Sanchez admitted fault, the primary issue presented to the trial court was whether Mrs. Sanchez was free from fault. In other words, was Dr. Sanchez justified in abandoning the matrimonial domicile because of his wife's cruel treatment?
After trial on the merits, the court decreed a separation on the basis that Dr. Sanchez was guilty of mental cruelty, and finding Mrs. Sanchez free of fault.
From this separation judgment Dr. Sanchez has appealed to this court for relief and asserts that the trial court was clearly wrong in finding Mrs. Sanchez free of fault.
*436 Dr. Sanchez contends his wife was at fault for the break-up of their marriage because her jealousy and continuous accusations eroded the mutual harmony of the marriage. Furthermore, he argues her constant negative remarks formed a pattern of mental harassment and the cumulative effect of her conduct supported a conclusion of fault.
Dr. Sanchez asserts that Mrs. Sanchez constantly harassed him about other women and accused him of infidelity. Dr. Sanchez dated his nurse, Gwen Satter during the first time the parties were physically separated and after they had reconciled.
Mrs. Sanchez requested her husband contact her every time Mrs. Satter came into his office. Dr. Sanchez testified that his wife frequently berated him saying that he trusted Mrs. Satter more around the office than he trusted her and that Mrs. Satter's opinion was more valuable to him. She accused him of having a sexual relationship with her and of fathering Mrs. Satter's child. This harassment was a constant everyday occurrence.
Another person who Mrs. Sanchez felt emotionally threatened by was Dr. Sanchez's first wife, Mrs. Ramirez. Mrs. Sanchez was very upset that Dr. Sanchez received letters from his former wife at his office. However, these communications were usually regarding their children.
The litany of this unhappy marriage continues with accusations of an unfaithful husband, with romantic trips to Puerto Rico, Miami, Florida and Tulsa, Oklahoma. Additionally there were frequent disputes when his children from Dr. Sanchez's first marriage came to visit. There was always arguments over disciplining the children and when Dr. Sanchez tried to mediate Mrs. Sanchez accused him of taking the children's side against her, causing the children to lose respect for her.
We learn from the record that their marital union was not always wholesome and harmonious. However, accusations of constant bickering are not necessarily sufficient to constitute fault for separation purposes.
We hold that a pattern of mutual incompatibility, fussing and bickering are not sufficient to constitute cruel treatment, Langton v. Langton, 442 So.2d 1308 (La. App. 3rd Cir.1983).
Dr. Sanchez's abandonment of his wife could be excused if he proved that Mrs. Sanchez was guilty of mental cruelty.
In Quinn v. Quinn, 412 So.2d 649 (La. App. 2nd Cir.1982) the Second Circuit stated that mere friction, dissatisfaction or incompatibility, however intense, are not enough to constitute such legal cause.
Our Supreme Court held that mere accusations by the wife of an illicit affair between her husband and another woman and unintrusive rides past her husband's work place, did not constitute acts of such severe nature as to allow a judgment of separation against her on the ground of cruelty, Adams v. Adams, 389 So.2d 381 (La.1980).
Judge Gaudin addressed this issue in Oster v. Oster, 480 So.2d 470 (La.App. 5th Cir.1985).
Mr. and Mrs. Oster were married for fifteen years and had three children. Mr. Oster alleged mental cruelty of his wife as a reason for abandoning the marital domicile.
Mr. Oster's complaints were summarized as follows:
"Mr. Oster did not suggest that his wife had been unfaithful or that she hadn't been a good mother, instead he said that Mrs. Oster didn't allow him sufficient freedom and that she felt that `... you should be a couple one hundred percent of the time...'. When she didn't get her way, Mr. Oster said, his wife would pout and `go on for days ... without talking to him...' and that she sometimes refused to have sex with him as a form of punishment. He also testified about such isolated things as Mrs. Oster refusing to go to a church barbecue because he had played golf earlier that day. Another time, Mr. Oster said, his wife was upset when an uninvited guest arrived for Sunday dinner. Also, Mr. Oster *437 testified that Mrs. Oster once became angry because he was going to Manresa for a retreat." 480 So.2d at 471.
The court also noted that the record reflected that the Oster marriage had some problems and that the couple sought outside assistance, to no avail. It further stated that the record did not, however, indicate that Mrs. Oster was responsible for the dissolution of the marriage. It noted that Mr. Oster there, just as Dr. Sanchez here, continued to reside with his wife after each of the incidents he described, and in a sense, he legally condoned most, if not all of the things he later objected to. The Court of Appeal further held that Mr. Oster apparently became unwilling to deal further with the perplexities of his marriage and simply left. The court stated "No single incident sparked his exit".
In Oster, we held that it is possible for a series of incidents to lay the foundation for a charge of mental cruelty against one of the spouses. In fact, we gave as an example of such a situation, the facts recited in the case of Manley v. Manley, 188 So.2d 194 (La.App. 2nd Cir.1966). We cited and quoted the Manley case as establishing its criteria for how a series of events may constitute mental cruelty:
"The record reflects a gradual deterioration of the marital relationship between these parties over the past several years. Some four or five years prior to institution of this action, defendant completely withdrew himself from the normal husband-and-wife relationship. He showed her no affection. His attitude toward her was one of resentment and, at times, even belligerence. For the past three years he refused to eat his meals at home. When in the city he would only sleep at home, leave early in the morning, return in the afternoon, leave again without his night meal, and return about 10:00 or 11:00 p.m. When leaving the city, as his work often required that he do, he would give his wife no information where he was going, where he could be reached, how long he would be gone, or when he would return. For two or three years immediately preceding their separation, defendant refused to speak to his wife, using their son as an intermediary to deliver messages."
We have and do clarify the principle that mere friction, dissatisfaction or incompatibility, are not enough to justify a withdrawal from the common dwelling. Furthermore, our Supreme Court in Pearce v. Pearce, 348 So.2d 75 (La.1977), indicated that "to constitute fault, a wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation."
This court further found that the factual situation in Oster was not a case of assessing credibility between Mr. Oster and Mrs. Oster. The court held that the allegations of Mr. Oster, as a matter of law, were not of a sufficiently serious nature to entitle Mr. Oster to a separation based upon mental cruelty. The court stated "... we think, Mr. Oster's testimony was that of a person who, in his own mind, found his marriage too inharmonious and unbearable to sustain. We do not say that a person in such an unhealthy frame of mind should stay with his or her spouse, but we are saying that if a husband (or a wife for that matter) finds flaws in his union or in his mate and he withdraws, he does so at his peril unless, as proclaimed in Pearce v. Pearce, his wife's transgressions are grave enough to be objectively considered an independent, contributory or proximate cause of his defection." 480 So.2d at 472 and 473. We stated that "this was a case of a wife being deprived of alimony after an extended marriage and three children because of legally insubstantial and mostly uncorraborated `faults' testified to by her husband." Although there are similarities between Oster and this case, each case is unique in some respects and should be evaluated on its own merits.
The record before us definitely portrays a marriage that is replete with problems and difficulties. The trial judge has found that Mrs. Sanchez is free of fault. We find no manifest error with this conclusion when considering the entire record.
*438 For the above reasons, the judgment appealed from is affirmed.
AFFIRMED.