459 So.2d 546 (1984)
Benjamin B. MATHEWS
v.
Vicki Fisk MATHEWS.
No. 83-CA-518.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1984.
On Rehearing November 13, 1984.
*547 Robert C. Lowe, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for plaintiff/appellee.
Michael A. McNulty, Jr., John A. Hollister, McNulty, O'Connor, Stakelum & Anderson; John M. Standridge, and Dennis J. Krystek, New Orleans, for defendant/appellant.
Before KLIEBERT, BOWES and GAUDIN, JJ.
BOWES, Judge.
Defendant has appealed from a judgment of the District Court: (1) finding mutual fault in granting a separation a mensa et thoro; (2) decreeing a divorce a vinculo matrimonii; and (3) awarding custody of the minor child of the marriage to both parents jointly, making them co-tutors. We affirm in part, reverse in part, and amend in part the trial court's judgment for the reasons set forth hereinafter.
Plaintiff Benjamin Matthews filed a petition for separation from bed and board in March, 1981, alleging cruel treatment by the defendant but specifying no particular acts by his wife. Mrs. Matthews reconvened, also alleging cruelty on the part of her husband in various particulars. Custody of the minor child was granted to the defendant, with enumerated visitation rights given to plaintiff. Various rules and motions were filed, but the allegations in the separation were not tried. In April, 1982, plaintiff filed a petition for divorce, based on living separate and apart; defendant filed a denial and re-alleged fault as in the separation.
Trial was held over a period of several days. At the conclusion, the court held that a preponderance of the evidence showed that Mrs. Mathews was guilty of adultery with two named men and probably so with a third man. The Court also held *548 that Mr. Mathews' fault consisted of indifference and inattention toward defendant and lack of interest in her career, amounting to mental cruelty. Joint custody of Robin was granted as the trial judge found that "Mrs. Mathews' extra-marital affairs did not have a deleterious effect on Robin." A joint custody planning guide was ordered by the court.
Defendant's appeal alleges three errors: that the finding that appellant was guilty of adultery was clearly erroneous and an abuse of discretion; that the award of joint custody was reversible error; and that the support award was inadequate and the Court was erroneous in not granting alimony. Plaintiff-appellee did not appeal, so the finding of fault of the trial court is final as to him.
We note at the outset that the trial judge erred in granting a separation a mensa et thoro and a divorce a vinculo matrimonii in the same judgment. Plaintiff initially filed suit for separation alleging cruelty; he subsequently filed another suit for divorce based on having lived separate and apart from his wife. The two actions, separation and divorce, carry distinctly different effects. Divorce dissolves matrimonial bonds; separation only serves to end conjugal cohabitation, the community of acquests and gains, and common concerns which previously existed. La.C.C. art. 136. By filing a new petition for divorce on different grounds and praying for different relief, plaintiff abandoned his first cause of action. See Pepe v. Drouant, 311 So.2d 582 (La.App. 1st Cir.1975). By alleging fault on the part of defendant, plaintiff preserved his right to litigate fault for the purpose of barring post-divorce alimony.
The defendant did not reconvene for divorce but answered, praying that the divorce petition be dismissed; in the alternative, she prayed that the divorce judgment declare her to be free from fault. She re-alleged cruel treatment as initially stated in her separation suit, but did not pray for a judgment of separation in her answer.
It is evident that the issue before the trial court was the divorce, and the issues to be decided were (1) whether grounds for the divorce existed based on the parties living separate and apart and (2) whether either party was at fault so as to bar permanent alimony. The trial court obviously intended this result in its judgment. However, since the separation action was no longer before the court as of the filing of the action for divorce (which was based on different grounds), it was error to grant a separation.
The evidence offered by appellee to prove adultery was basically in three parts. The testimony of Roy Mouras was clear and unambiguous in that he claimed to have had sexual relations with the defendant many times at her home, her mother's house, and several other places during 1979-1980. Mrs. Mathews denied the same. However, Mouras' testimony was bolstered, so to speak, by his accurate memory which allowed him to diagram at the trial, some two years later, and apparently with very substantial correctness, the layout of the bedroom of Mrs. Mathews in her home, a feat we deem impossible to someone who had not been there often. Certainly his testimony was believable and convincing and the astute trial judge cannot be found erroneous if he chose to believe him.
Mrs. Melka ("Didi") Walker, a friend (or, at least, a former friend) of Mrs. Mathews, testified that the defendant admitted to having had sexual intercourse with Doug Jennings during the period of her marriage. Mrs. Mathews denied both the affair itself and having admitted it to Mrs. Walker. Further testimony by Mrs. Walker revealed that she and the defendant had been very close friends, conversing with and apparently confiding in each other on many, many occasions. Taken as a whole, the testimony of "Didi" Walker literally smoked from the fire of many incriminating statements and inculpatory innuendos confided to her by Mrs. Mathews. Again, we cannot find error on the part of the trial judge who evaluated the live witnesses, if he found guilt of adultery in this testimony.
*549 Finally, the plaintiff presented two private detectives who testified relative to their surveillance of the defendant, and of several "dates" or meetings that she had with Doug Jennings and James Olsen at various places (and with Olsen in his home). Although this testimony contained some flaws, it offered additional proof of Mrs. Mathews' remaining alone "behind closed doors" with other men, for hours at a time, late at night and in the early morning. These habitual clandestine rendevous, combined with the other evidence outlined above, establish a pattern of behavior which, taken in its entirety, tend to negate any other reasonable conclusion but that defendant was committing adultery.
We are aware of the cases which hold that being alone with a person of the opposite sex, even overnight, does not give rise to a presumption of adultery. However, we have not based our finding only on Mrs. Mathews' "keeping company" with other men, but on the plethora of evidence which clusters together to form the picture which the trial judge saw, that of an unfaithful wife.
While the evidence as to the defendant's adultery may not be completely overwhelming, it is not necessary to prove adultery beyond the shadow of a doubt. To do so would require photographs of the parties in the sexual act. A party must establish by circumstantial evidence facts which lead reasonably to the conclusion that adultery has been committed and exclude all other reasonable hypothesis of innocence. See Morrison v. Morrison, 316 So.2d 453 (La.App. 3rd Cir.1975), Writ denied 322 So.2d 772 (La.1975), which we quote as follows:
The appellant argues that the trial judge did not apply the proper standard of proof in this case ... The appellee argues that a standard of proof requiring overwhelming evidence of the commission of adultery is a far greater burden than that presently placed on the plaintiff in an adultery case by the jurisprudence. He submits that the only proof of adultery which would be overwhelming would be photographs of the parties in the act of intercourse.
... The jurisprudence of this state is to the effect that when circumstantial evidence is used to establish adultery, a prima facie case may be made out by showing facts or circumstances that lead fairly and necessarily to the conclusion that adultery has been committed as alleged in the petition. Coston v. Coston, 196 La. 1095, 200 So. 474 (1941). The proof must be so convincing as to exclude all other reasonable hypothesis but that of guilt of adultery. Daigle v. Daigle, 222 So.2d 318 (La.App. 1st Cir.1969).
In connection with the discussion of this issue, we note the great weight which is given to the trial judge's findings of fact in Louisiana. The language found in the opinion of Justice Tate in Canter v. Koehring Co., et al, 283 So.2d 716 (La.1973) is pertinent at this point.
`When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, on review the appellate court should not disturb this factual finding in the absence of manifest error.'
Applying Canter to the present case we must give great weight to the factual conclusions of the trial judge as to the commission of adultery. There was a conflict in the testimony in this case. Furthermore, we find that the evaluations of credibility and the inferences of fact on the part of the trial judge were entirely reasonable. Finding no manifest error on the part of the trial judge, we affirm his finding that adultery was committed by the appellant.... Id. at 457.
We agree with and adopt the rationale set out above in Morrison. Applying that rationale to the conflict of evidence in this case, it is evident that the trial judge decided that the husband did introduce circumstantial evidence of facts leading reasonably to the conclusion that adultery had been committed and excluding all other reasonable *550 hypothesis of innocence. Following the rationale of Morrison, supra, we cannot say that he erred.
We, therefore, affirm the finding of the trial court that Mrs. Matthews was guilty of adultery for the purpose of denying permanent alimony.
In determining the right to post-divorce alimony, our courts have held:
Fault for purposes of permanent alimony preclusion is synonymous with the fault grounds for separation and divorce under LSA-C.C. Articles 138 and 139....
The wife bears the burden of proving her freedom from fault in order to be entitled to alimony following divorce. Boudreaux v. Boudreaux, 407 So.2d 1363 (La.App. 3rd Cir.1981).
We find that Mrs. Mathews did not carry the burden of proof thus imposed upon her. Further, since Mr. Matthews did not appeal and the finding of fault is final as to him, it is clear that both parties were at fault in the separation and continuous living apart, and the resultant divorce. Consequently, both parties are precluded from receiving permanent alimony.
In our determinations above, we have not considered the taped telephone conversations between Mrs. Mathews and Didi Walker for any purpose other than impeachment of Mrs. Mathews. Tape recordings may be admissible as prior inconsistent statements, and their admission into evidence for this limited purpose was not error. Arseneaux v. Arseneaux, 417 So.2d 856 (La.App. 4th Cir.1982).
Further, we hold that the joint custody provisions of Civil Code article 146 are applicable in the present case. Defendant argues that since the separation took place prior to the effective date of Article 146, as amended, (the effective date is January 1, 1983), that the prior article should apply and she should be granted sole custody. Article 146 addresses itself to suits "yet pending and undecided." The last date of this trial was January 19, 1983. The judgment was rendered and signed on February 2, 1983. Therefore, article 146, as amended, is applicable, and we affirm the award of joint custody.
With regard to the award of $400.00 for child support, the comprehensive household expense list submitted by Mrs. Mathews seems reasonable to this Court. Allowing only for Robin's pro rata share of rent, utilities, etc., we have calculated an expense of approximately $700.00 per month for the child's living expenses. Civil Code articles 227 and 231 state that both parents have the obligation of supporting their children in proportion to their means. The degree of support is determined by the need of the child and the ability of those who are to pay it. Ducote v. Ducote, 339 So.2d 835 (La.1976). In the present case, Mr. Mathews testified that his salary is $2,000.00 per month. Mr. Mathews' counsel indicated his client's earnings were $30,000.00 per year; Mrs. Mathews testified he had earned $36,000.00 annually. We are convinced his real annual income substantially exceeds the $30,000.00 that he admitted to. Whichever figure is correct, Mr. Mathews does evidently have supplemental benefits from his family-owned corporation, such as interest-free "loans". The home in which he lives is owned by his family's corporation and is rent-free to him. Mrs. Mathews earns, generally, $125.00 monthly, and sometimes slightly more. Under the facts and circumstances of this case, and under our jurisprudence, we find that an award of $600.00 per month for the support of the minor child, for the nine months that she has physical custody, is equitable and supported by the evidence in the record. During the three months when the plaintiff has custody (during summer vacation), $300.00 per month is fair.
For the above and foregoing reasons, we annul the finding of the trial court granting a separation a mensa et thoro based on mutual fault, and affirm that portion of the judgment which granted the divorce on grounds of the parties having lived separate and apart for over one year without reconciliation. We amend the judgment to reflect post-separation fault on the part of *551 the defendant wife sufficient to preclude permanent alimony; the finding of fault as to Mr. Mathews remains unaffected. We affirm the judgment insofar as it awards joint custody to both parents on the terms set by the trial court and we amend and increase the child support award to $600.00 per month, during the time when defendant has physical custody, and $300.00 per month when plaintiff has custody.
Each party is taxed his own costs of this appeal.
AFFIRMED IN PART, ANNULLED IN PART, AMENDED AND RENDERED.
Before KLIEBERT, BOWES, GAUDIN, GRISBAUM and DUFRESNE, JJ.

ON REHEARING
KLIEBERT, Judge.
By order dated March 7, 1984 a rehearing, limited to the issue of whether this court erred in its opinion dated January 10, 1984 insofar as it reversed the trial judge's granting of the separation judgment, was granted. The original three-judge panel divided on this issue, thus necessitating a five-judge panel. The matter was re-briefed and re-argued before the five-judge panel. We now affirm the trial court's granting of the judgment of separation.
Plaintiff, Benjamin Mathews, the husband, in March of 1981, filed a petition for separation from bed and board, alleging cruel treatment on the part of his wife. The wife answered and also reconvened alleging cruel treatment on the part of her husband. Various rules and motions were filed, but the trial of the separation action was delayed.
In April of 1982 the husband filed a petition for divorce based on living separate and apart for more than one year without a reconciliation. The wife filed a general denial and re-alleged fault on the same grounds alleged in her reconventional petition for separation. The divorce suit was docketed under the same number as the previously filed separation suit. It was later consolidated for trial with the separation suit. The trial transcript reflects that although consolidated for trial, the trial court and the attorneys agreed at the close of the trial that a judgment would be forthcoming on both the separation suit and the divorce suit.
In a single document the trial judge issued several decrees which included a decree of separation from bed and board and a separate decree of divorce. Among other actions taken on the appeal, this Court, in its opinion dated January 10, 1984, relying on Pepe v. Drouant, 311 So.2d 582 (1st Cir.1975) reversed the trial court's granting of the separation decree.
We now believe our original reliance on the Pepe case was misplaced. In Pepe, the court refused to apply the provisions of Code of Civil Procedure Article 1153 (the amendment relates back to the date of filing the original pleading) to an amended petition for separation filed by the wife. The original petition for separation alleged cruelty. The amended petition alleged one year living separate and apart as the grounds for the separation. Although filed under the same docket number, the amended petition was found to be a separate cause of action, hence, the court refused to apply the provisions of Article 1153. The situation here is different from the Pepe case in that the amended and supplemental petition in Pepe actually deleted the cruelty allegations of the original petition and alleged new grounds for the action. Hence, the deletion of the original allegations was considered an abandonment of the original petition alleging cruelty. Here, however, the separation suit was not abandoned. Rather, it was tried in a consolidated hearing with a subsequently filed divorce action based on one year living separate and apart under an agreement to have judgment rendered in both the separation and the divorce actions.
On rehearing, the wife, through her new counsel, urges several additional Fourth Circuit cases in support of her present contention that the trial judge erred in granting the separation judgment; namely, Morice v. Morice, 419 So.2d 1003 (4th Cir.1982); Saunders v. Saunders, 422 So.2d 245 (4th *552 Cir.1982); Flamm v. Flamm, 442 So.2d 1271 (4th Cir.1983).
In Morice, the issue was whether the community of acquets and gains terminated on the date the petition for separation based on cruelty was filed or on the date the separation petition was amended to pray for a divorce based on a one year voluntary separation. Relying on Pepe, the court held the supplemental petition asserted a "different cause of action" from the original petition and that the "different cause" (the expiration of one year since the date of the voluntary separation) did not exist at the time the original petition was filed, consequently, it refused to apply the provisions of C.C.P. Article 1153. Although we are unable to determine whether the amending and supplemental petition praying for the divorce deleted the cruelty allegations (as was the case in Pepe) we note that it differs from the case here in that the separation action was abandoned rather than tried.
In Saunders, the wife filed a suit for separation based on abandonment and was granted same. Thereafter, the husband filed a suit for divorce based on one year voluntary separation. The wife reconvened asking that the husband's suit for divorce be dismissed and a divorce be granted to her based on the previously rendered separation judgment. The Fourth Circuit refused to grant the wife a divorce based on her previous separation judgment because less than one year had expired since the date of its rendition. Thus, this case has no application here because the grounds necessary to support the divorce were not present. Hence, the case turns on an entirely different issue from that involved here.
In Flamm, the appellant husband contended the trial judge's action in pretermitting the separation suit (based on cruelty) and rendering a divorce (based on one year's living separate and apart) constituted an unconstitutional deprivation of property because the community had to be divided as of the date of filing the divorce action rather than the date of filing the separation suit. The court refused to consider the issue because the separation judgment was not before it on the appeal.
Here the separation judgment is on the appeal before us. Further, we are not confronted with the question of when the community of acquets and gains formerly existing between the parties terminated or with the application of the provisions of C.C.P. Article 1153, nor do we pass on those issues. Rather, the issue, pure and simple, is whether the separation suit could be maintained and tried notwithstanding the pendency of a divorce action based on separate and distinct grounds. That issue was not directly presented or passed on in any of the above cited and discussed cases and is res novo to us. Further, although present, it was not directly passed on by the court in Jordan v. Jordan, 408 So.2d 952 (2nd Cir.1981).
In Jordan, the wife filed for separation on the grounds of abandonment. The husband reconvened for divorce on the grounds of living separate and apart for more than one year. The wife answered this reconventional demand of the husband. The Second Circuit without discussion upheld the trial court's ruling that the reconventional demand for a divorce took precedence over the initial suit for separation and consequently restricted the trial to the suit for divorce. Nevertheless, in the primary issue involved on the appeal, i.e., the wife's entitlement to permanent alimony, the case was remanded to give the wife an opportunity to amend her pleadings and have a hearing on the issue. Thus, she obtained her desired hearing on the issue of fault as the same had been alleged in her separation petition. In our view, the Jordan case should be confined to its facts. It should not be read to mean that every subsequently filed demand for a divorce takes precedence over an untried suit for separation.
Since the separation suit has as its prime objective the termination of conjugal cohabitation and the termination of acquets and gains all without the termination of the marital vows, and the divorce suit has as an additional prime objective the termination *553 of the marital vows, we hold that where, as here, the two are based on separate and distinct grounds, the subsequent filing of the divorce action does not, as a matter of law, automatically abate the separation action.
The fact the petition for divorce was docketed under the same number as the petition for separation is immaterial. The filing of either petition for separation or divorce commences a proceeding in which marital problems other than the mere separation or divorce may be resolved. In the proceeding so commenced issues such as custody of children, visitation, support, alimony, liquidation of the community, etc. may be judicially resolved. Once commenced, the action is analagous to a succession proceeding rather than to a single suit, in that, various causes of action and different subjects are heard and resolved within the same proceeding.
Further, although the rendition of a divorce judgment abates some of the effects of a previously rendered separation judgment, it does not necessarily abate all of them. Some issues, such as, liquidation of the community, can be waived and/or reserved for adjudication at some subsequent time in the same proceeding or in some subsequent suit. As of the time of this appeal the liquidation of the community of acquets and gains was as yet unheard.
Accordingly, our original opinion of January 10, 1984 is corrected to provide that the judgment of separation granted by the trial court is affirmed rather than reversed. In all other respects the opinion of January 10, 1984 is to remain in full force and effect.
AFFIRMED IN PART.
BOWES, J., dissents.
BOWES, Judge, dissenting.
In my view, the majority opinion correctly notes that the issue of the date on which the community terminated is not before us at this time. I also agree with the finding that the two actions have different primary objectives and are based on separate and distinct grounds. It is, however, difficult to bridge the gap between those latter findings and the conclusion of the majority that a separation and divorce can be granted in the same judgment.
From my reading of the record, it is not apparent that the attorneys agreed, along with the trial judge at the close of trial, that a separation judgment should be forthcoming, along with the divorce. Rather, counsel for plaintiff Mr. Mathews stated that he felt that the separation should be ruled upon "even if it be a mutual fault separation because we can have some repercussions from a financial standpoint." The Court agreed, granting the disputed judgment. Counsel for defendant was silent as to this point. (See Tr. Vol. III, p. 197)
Even if both attorneys had so agreed, such would be irrelevant because the actions herein and their respective objectives are mutually inconsistent and therefore cannot be tried together except in the alternative. C.C.P. 462. Separation from bed and board does not dissolve the bond of matrimony, but puts an end to their community and to their obligation to live together; divorce dissolves the bond of matrimony. C.C. Art. 136; 155; and 159. It therefore defies logic to declare that a separation and divorce can mutually co-exist at the same time in the same judgment.
Indubitably, the actions could be tried together if pleaded in the alternative. DeMaupassant v. Clayton, 214 La. 812, 38 So.2d 791 (1949). Granting both within one judgment gives the parties two different forms of relief which are, in my opinion, mutually exclusive. The parties are still married, and also no longer married, at one and the same time. Such a result is substantially violative of Civil Code Articles 136, 155, and 159; and is procedurally incompatible with C.C.P. article 462. Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. R.J. D'Hemecourt Petroleum v. McNamara, 444 So.2d 600 (La. *554 1983). The "agreement" found by the majority, which I do not believe exists, contravenes the substantive as well as procedural law, and has effects which go beyond the rights of the parties themselves. Therefore, neither the trial court nor this appellate court is bound by such an "agreement" if there was one.
Finally, I find the majority's attempts to distinguish the cited cases, particularly Pepe and Morice, unsuccessful. In my view, the rationale of Pepe, Morice and our case are the same. In this regard, I disagree with the statement of the majority that we relied on Pepe (as authority) in our original opinionwe simply agreed with it's rationale which the majority now tries to distinguish. Whether or not plaintiffs specifically deleted the fault allegations in Pepe and Morice, or effectively did so by filing a new action requesting new relief on different grounds which did not exist at the time the original action was filed, is a distinction without a difference. All plaintiffs abandon their prayer for separation when they subsequently pray for divorce; and if, as in the Jordan situation, one party's subsequent petition for divorce takes precedence over the other's previously filed petition for separation, pretermitting that action for separation, how can this court hold that the separation action filed by plaintiff can be tried concurrently with the divorce filed by the identical spouse litigant? I see no reason to confine Jordan to its specific facts. According to Jordan, the subsequent action for divorce took precedence over the initial separation suit.
For the foregoing reasons, I respectfully dissent.