511 So.2d 65 (1987)
Percy G. CREDEUR, Plaintiff-Appellant,
v.
Betty Mae LALONDE, Defendant-Appellee.
No. 86-726.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
Writ Denied October 16, 1987.
Lawrence N. Curtis, Lafayette, for plaintiff-appellant.
Alfred Octave Pavy, Opelousas, for defendant-appellee.
Before FORET and KNOLL, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge Pro Tem.
The issue presented by this appeal is whether the trial court was clearly wrong in finding as a fact that a spouse's abandonment, otherwise constituting fault in her divorce, was excused due to her mental illness.
On September 4, 1984, plaintiff, Percy G. Credeur, filed for legal separation from his wife, defendant, Betty Mae Lalonde, based on grounds of abandonment. Subsequently, defendant filed a rule for alimony pendente lite, which rule was heard on February 8, 1985, and resulted in defendant being granted $200.00 per month alimony pendente lite. Defendant thereafter filed a petition for and obtained a judgment of divorce based on living separate and apart for more than one year.
During a note of evidence taken at a hearing on September 6, 1985, a psychiatrist, Dr. Sidney J. Dupree, testified that he had first seen the defendant on February 9, 1984 when she was admitted at the Cypress Hospital for nervous problems. He testified that the defendant's symptoms included depression, anxiety, some confusion, hallucinations *66 and delusions. He diagnosed her as having a "scheizophreniform disorder," and indicated that this condition had existed for some time before her arrival at the hospital. The doctor further testified that he saw the defendant three times subsequent to her discharge from the hospital, and that the last time, on March 8, 1984, he still felt that defendant suffered from the same mental disease, but that it was in remission. On cross-examination the doctor admitted that he had no way of knowing what defendant's present psychiatric state was, and that he had no way of knowing what defendant's mental condition was on August 27, 1984, the date on which defendant allegedly abandoned the matrimonial domicile.
On November 8, 1985, defendant filed a rule for permanent alimony, which rule was taken up at a hearing on January 3, 1986. Following the hearing the trial court found that any fault on the part of defendant was excused due to defendant's mental illness. The trial court then rendered judgment in defendant's favor, ordering plaintiff to pay post divorce alimony of $200.00 per month. Plaintiff now appeals from this judgment, contending that the trial court erred in finding that defendant was suffering from mental illness at the time of her abandonment which excused her fault in the divorce.

DEFENDANT'S EXCUSAL FROM FAULT
The law concerning excusal from fault due to a preexisting mental illness such that will entitle a spouse to alimony is set forth in Kaplan v. Kaplan, 453 So.2d 1218 (La.App. 2 Cir.1984), writ den., 458 So.2d 484 (La.1984), from which we quote:
"A wife who has not been at fault and has insufficient means for her support is entitled to receive alimony after divorce. LSA-C.C. art. 160. Brannon v. Brannon, 362 So.2d 1164 (La.App.2d Cir. 1978). The wife bears the burden of proving freedom from fault in order to be entitled to alimony following divorce. Sachse v. Sachse, 150 So.2d 772 (La.App. 1st Cir.1963); Brannon v. Brannon, supra. Fault which will deprive a spouse of permanent alimony after divorce must be of such a degree that it would independently constitute a grounds for a separation. Pearce v. Pearce, 348 So.2d 75 (La.1977); Brannon v. Brannon, supra; Vail v. Vail, 390 So.2d 978 (La.App.2d Cir.1980); Adams v. Adams, 389 So.2d 381 (La.1980). Fault is a question of fact and the trial court's finding on the issue will not be disturbed on appeal absent a manifest abuse of discretion. Pearce v. Pearce, supra.
Actions that would normally be construed as fault contributing to the separation are excused when involuntarily induced by a preexisting mental illness. Courville v. Courville, 363 So.2d 954 (La.App.3d Cir.1978); Gipson v. Gipson, 379 So.2d 1171 (La.App.2d Cir.1980); Bettencourtt v. Bettencourtt, 381 So.2d 538 (La.App. 4th Cir.1980); Morrison v. Morrison, 395 So.2d 909 (La.App.2d Cir. 1981)."
It is uncontested that defendant left the matrimonial domicile on August 27, 1984 and did not return for more than one year. Defendant contends that she left the family home because the plaintiff and defendant's daughter refused to help her when she was sick with mental illness; that plaintiff cursed her and threatened to hit her; that plaintiff would get angry when defendant would complain of her mental illness. While such reasons for abandoning the matrimonial domicile might not constitute legal cause for abandonment and might give rise to a finding of fault on the part of defendant, such actions constituting fault are excusable if they were involuntarily induced by a preexisting mental condition. LSA-C.C. arts. 138, 143; Bettencourtt v. Bettencourtt, 381 So.2d 538 (La.App. 4 Cir. 1980), writ den., 383 So.2d 12 (La.1980); Courville v. Courville, 363 So.2d 954 (La. App. 3 Cir.1978), writ den., 365 So.2d 243 (La.1978).
In the instant case defendant was diagnosed on February 9, 1984 as suffering from a scheizophreniform disorder which, in Dr. Dupree's opinion, was in remission on May 8, 1984. Although defendant had left home a disputed number of times prior *67 to August 27, 1984, she left home for the final time on that date, which prompted plaintiff's petition for separation based on abandonment. When questioned about characteristics of defendant's mental disease, Dr. Dupree explained:
"They're very perfectionistic. For example, they like to have things just so. They get upset when things are not arranged properly at home ... They tend to pick a lot on other people especially about the way they do things. It's never good enough generally. They very often have ideas that even general types of remarks are directed at them."
Defendant was recommended to continue her medication and seek followup on an out-patient basis; however, defendant never returned to seek medical help and flushed her medicine down the toilet. Dr. Dupree testified that defendant felt that people, primarily her husband and daughter, were trying to harm her. Defendant believed that her husband and daughter were responsible for her sickness.
Plaintiff contends that there was insufficient evidence on which the trial court could find that the defendant was excused from fault. Specifically, plaintiff contends that there was no evidence indicating that the defendant was suffering from mental incapacity at the time that she left the matrimonial domicile.
We find there was sufficient evidence on which the trial court could have found that the defendant was excused from fault. Defendant had been mentally ill for some time prior to her admission to Cypress Hospital on February 9, 1984. She was discharged from the hospital on May 8, 1984, at which time she was under medication and her mental illness was in remission. On August 27, 1984, defendant left the matrimonial domicile and stopped taking her medication. Although Dr. Dupree testified that he had no way of knowing what defendant's mental condition was as of that date, we note that medical expert testimony is not necessary for a finding of mental incapacity sufficient to excuse a spouse from fault. Gipson v. Gipson, 379 So.2d 1171 (La.App. 2 Cir.1980), writ den., 383 So.2d 799 (La.1980). Dr. Dupree did testify that beliefs that others were trying to harm her were symptoms of and could aggravate her mental condition. Defendant apparently felt that her husband and daughter meant to harm her and that they were causing her mental condition. Under these circumstances, there was a reasonable factual basis upon which the trial court could have concluded that defendant was, on August 27, 1984, suffering from a mental illness and that her illness contributed to or was the cause of her abandonment. Absent manifest error, findings of the trial court will not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For the reasons assigned, the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.