537 So.2d 814 (1989)
Patricia Ann Daly EPPLING
v.
Irvington Joseph EPPLING.
No. 88-CA-513.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1989.
Writ Denied March 3, 1989.
*815 Lanny R. Zatzkis, Karen D. McCarthy, Lawrence E. Mack, New Orleans, for plaintiff/appellant.
Wayne M. Le Blanc, Metairie, for defendant/appellee.
Before BOWES, WICKER and GOTHARD, JJ.
WICKER, Judge.
Patricia Ann Daly Eppling appeals simultaneous judgments of separation and divorce and a finding of mutual cruel treatment. Irvington Joseph Eppling cross appeals the judge's failure to consider constructive abandonment and his finding of mutual fault. He also claims his wife's appeal is frivolous. The issues before us are the sufficiency of evidence of cruel treatment of the parties, mental illness as a defense to an action based upon cruel treatment, condonation as a defense to a separation action, the existence of evidence of abandonment or constructive abandonment, the sufficiency of evidence of living separate and apart for one year, and the propriety of rendering simultaneous judgments of divorce and separation. We affirm.
Mr. and Mrs. Eppling married in 1965. They separated late in 1985, agreeing not to sue each other for abandonment. Mrs. Eppling initiated this proceeding by filing for a separation in March 1986 based upon the grounds of Mr. Eppling's cruel treatment. Mr. Eppling reconvened alleging cruel treatment, constructive abandonment, and living separate and apart in excess of one year.
During this time, there were hearings on the issues of custody, child support, and alimony pendente lite. Mr. Eppling sought sole custody of the couple's minor children on the grounds that Mrs. Eppling's mental illness made her an unfit parent. A previous judge awarded custody of their son to Mrs. Eppling and their daughter to Mr. Eppling.
Trial of the fault issues took three days; and each party had both lay and expert witnesses. The trial judge concluded that the competing claims of mental cruelty of Mr. and Mrs. Eppling had been proven by a preponderance of the evidence and found the parties mutually and reciprocally at fault. He dismissed Mr. Eppling's claim of constructive abandonment. He also determined that the parties had, at the time of the trial, been living separate and apart for more than a year and granted a divorce to Mr. Eppling. The judge's twenty pages of reasons are persuasive.
Constructive Abandonment
The facts indicate that the parties were married on August 25, 1965. They raised four children of the marriage, two of whom are now majors. Over the course of the marriage they experienced frequent and unresolved conflicts over money matters. Mrs. Eppling insisted that her husband did not adequately financially provide for her and the family. Mr. Eppling insisted he adequately provided for his wife and family and maintained his wife's position was simply unreasonable. Throughout the twenty-one years of marriage, this couple had previously separated on three occasions. They had attended marriage counselling on six occasions. Their final separation occurred in October of 1985.
On October 17, 1985, Mr. Eppling attended a reconciliation discussion with Attorney Vincent LoCoco. Mrs. Eppling attended represented by Attorney Evangeline Vavrick. The primary purpose *816 of this discussion was not to discuss a separation, rather was for the purpose of reconciling the differences which existed between the parties and in particular to identify and solve the marital problems, particularly as they related to money matters. Mr. LoCoco testified that during the meeting discussions broke down because Mrs. Eppling persisted in concluding that Mr. Eppling made more money than he allocated to provide for his family. She also insisted that he caused unidentified problems with the children. Mrs. Eppling became very upset, and made threats of physical violence to Mr. Eppling which resulted in an agreement between all parties present that Mr. Eppling would not return to the matrimonial domicile, but that his actions in not returning would not be construed as an abandonment.
Thereafter, all parties met on a second occasion in approximately late January of 1986. This follow-up meeting was again over money matters. Mr. Eppling brought various financial records in an attempt to illustrate his financial position and to balance his financial ability to pay with his family's needs. This meeting, like the first, was ended when Mrs. Eppling stormed out and took Mr. Eppling's car.
The parties have remained separate and apart since that time.
The respective suit and counter-suit followed almost immediately thereafter.
The facts and evidence clearly demonstrate that the October, 1985 meeting, and the January, 1986 meeting, were for the purpose of attempting to identify and address the marital problems which existed between the parties. This reconciliation could not be accomplished. It is clear, however, that Mr. Eppling left the matrimonial domicile with the express understanding that his actions in doing so would not subject him to a suit for abandonment. I find that it is equally clear that it was tacitly implied, if not understood, that in such arrangement there was a like understanding that neither would sue the other for abandonment. Accordingly, at the outset I dismiss Mr. Eppling's claim for constructive abandonment as the facts fully support a finding that under the circumstances then existing the parties knowingly acquiesced in, and agreed to live separate and apart.
We agree with the trial court's conclusion on the abandonment issue that Mr. and Mrs. Eppling voluntarily began living separate and apart. We affirm his ruling in this regard.
Mental Cruelty
A consideration and study of all of the testimony and evidence as it relates to mental cruelty on the part of Mr. Eppling, establishes as a fact that his conduct throughout a substantial number of years of this marriage was one of extreme indifference, coldness and lack of caring, and even rebuking the affection of his wife. It is clearly established that throughout Mr. Eppling's earlier affair with Annette Roberts, Mrs. Eppling knew in her own mind (albeit without legal sufficient proof) that such an affair was occurring. Mrs. Eppling, being forced to constantly be in the presence of Mrs. Roberts, experienced the emotional humiliation and mental suffering which would naturally follow. Though this affair was ultimately admitted by Mr. Eppling, and the parties reconciled their differences and continued to live together for ten years thereafter, Mr. Eppling's conduct in the following ten years demonstrates little, if any, affection toward his wife. His attitude and conduct in the presence of their close friends, Mrs. Mackie and Mrs. Doody, as well as his decision to visit Mrs. Kilpatrick [a recently-widowed former girlfriend], are examples of further actions on Mr. Eppling's part which illustrate his general indifference toward her. The facts further establish that shortly after the separation, Mr. Eppling, while in Baton Rouge, made a call to another "old girlfriend", Gretchen Rothchild, and has since shortly thereafter, been living and residing with Mrs. Rothchild.

*817 The evidence as a whole is sufficient to support Mrs. Eppling's claim of mental cruelty on the part of Mr. Eppling. Kuchta vs. Kuchta, 296 So.2d 326 [La. App. 4th Cir.1974].
With regard to Mrs. Eppling, the record shows much evidence of mental cruelty which, if not excused by mental illness, would constitute fault. Particularly, there were several instances of outrageous and humiliating public behavior toward Mr. Eppling: cursing, berating, and accusing starting prior to their physical separation and continuing for months afterward.
He described an incident which occurred at Tony Angelo's Restaurant wherein Mr. Eppling and clients were going to dinner with a bank officer after just closing a loan. Mrs. Eppling was invited to join those involved for dinner. Enroute to Tony Angelo's Mr. Eppling states he suggested that he and his wife drive to Tony Angelo's together in the same car, but she elected otherwise. The result of them going in different cars caused Mrs. Eppling to arrive first and upon doing so, could not find Mr. Eppling and the bank officers. She then left but returned, and on returning found Mr. Eppling and the bank officers seated at a table in Tony Angelo's restaurant. Mrs. Eppling approached the table and without explanation or warning, approached her husband and stated "fuck you, Irving Eppling."
Mr. Eppling described the astonishment of those in attendance, as well as his humiliation.
Mr. Eppling also described an incident which occurred in September of 1985 at an occasion described as the "Nagle Party". During September of 1985, Mr. Eppling states that he and his wife had already been in the process of mediation and consideration as to whether or not divorce was necessary. This incident occurred just prior to the meeting with Attorneys LoCoco and Vavrick. Mr. Eppling was to attend a party at the Nagle home. Mrs. Eppling asked if she could attend. Toward the end of the party at approximately 5:00 P.M. in the afternoon, and while in the presence of several guests, including a 4 year old child, Mrs.
Eppling asked Mr. Eppling to tell everybody why he "fucked his secretary for 4 or 5 years". One of the guests immediately removed the minor from Mrs. Eppling's presence and Mrs. Eppling restarted, then persisted in her accusations and cursing. She did not appear to be intoxicated.
Later, Mrs. Eppling was calmed down and she and Mr. Eppling left the Nagle party. On arriving at their car, Mrs. Eppling got behind the wheel, started the car before Mr. Eppling could enter. At the time he was toward the right front of the car. Mrs. Eppling immediately put the car in motion and Mr. Eppling claimed she tried to run over him. Mrs. Eppling claims she told Mr. Eppling that if he didn't move "I'll have to hit you". She stated she was embarrassed over "saying those things".
A third and similar incident was recounted by both parties involving the Port St. Louis project. Mr. Eppling had just completed a business deal involving Port St. Louis. A party followed, and at the conclusion of the party Mr. and Mrs. Eppling were invited to return to their cars via boat. The boat trip would take approximately one (1) hour. During the return trip by boat, Mrs. Eppling accused her husband, in the presence of others, of getting paid off for doing the project. The Port St. Louis officials were present. She also began to accuse her husband of having "affairs" and accused the politicians of being paid off. Mrs. Eppling, as an explanation, stated she was concerned over the fact that her babysitter had to be taken home. She had insisted that the boat return to dock so she could get off and when it did not she caused the aforementioned disturbance. She admitted she was just outraged and angry because the boat would not go back to the dock so she could take her babysitter home. Mr. Eppling also testified that Mrs. Eppling appeared angry that no one "slapped her on the back" while everybody was seemingly congratulating her husband for a job well done with respect to the project.
*818 Once again, we agree with the trial judge's conclusion that the parties were both at fault in causing the breakup of the marriage and affirm his decision.
Financial Matters
Both parties content that the issue of finances was a source of constant argument and marital discord. The court concludes, on the basis of substantial evidence in this record, that Mr. Eppling adequately provided for his wife and family. The evidence reveals an unreasonable conduct on the part of Mrs. Eppling who simply refused to accept, as adequate, the finances available to the Eppling family. As further evidence of Mrs. Eppling's attitude toward finance, this record supports several incidences of specific unreasonable conduct on the part of Mrs. Eppling. That is, on one instance when Mr. Eppling questioned whether or not her car should be repaired, she went out and bought a new car. On a second incident when she wanted a new fur coat, and Mr. Eppling refused, she went out and bought it anyway. On a third instance, after their separation, when Mrs. Eppling's TV broke, she asked Mr. Eppling to buy a new TV. Rather than buy a new TV, Mr. Eppling delivered his TV to her for her use. Thereafter, Mr. Eppling bought himself a small TV set and a VCR. Mrs. Eppling, upon learning of Mr. Eppling's purchase, went to his office and proceeded to smash the new TV and VCR with a hammer in retaliation for what she perceived to be Mr. Eppling's unreasonable denial of her request. Mrs. Carey Mackie, witness for Mrs. Eppling, upon learning that Mrs. Eppling had smashed the television, congratulated her.
The court concluded, and we agree:
The conduct of both these parties exceeds normal arguments and bickering which may be insufficient to support such an action[,] citing Adams v. Adams, 389 So.2d 381 (La. 1980) and Sanchez v. Sanchez, 490 So.2d 434 (La.App. 5th Cir. 1986).
We also hold that Mr. Eppling did not condone those episodes of cruel treatment which occurred immediately prior to their separation. Even if he had condoned similar behavior earlier in his marriage, this has not the effect of condoning later behavior which clearly contributed to the separation.
THE MENTAL ILLNESS DEFENSE
"Actions that would normally construed as fault contributing to the separation are excused when involuntarily induced by a preexisting mental illness." Kaplan v. Kaplan, 453 So.2d 1218, 1221 (La.App. 2d Cir.1984), writ den. 458 So.2d 484 (La.1984). However, the mental illness must be shown to have caused the behavior which would otherwise constitute marital fault. Credeur v. Lalonde, 511 So.2d 65 (La.App. 3rd Cir.1987), writ den. 513 So.2d 822 (La.1987). We thus have two questions to consider: whether Mrs. Eppling has borne her burden of proving mental illness and whether, if so, that mental illness has been proven to have caused the mental cruelty inflicted on Mr. Eppling. We find, as did the trial judge, that she has not met her burden of proving mental illness.
Three mental health experts testified on behalf of the parties, and we summarize that testimony.
WALTER G. ROBINSON, M.D.
Dr. Robinson was an expert in neuro-psychology and electroencephalography; the court qualified him as an expert witness in psychiatry. He first saw Mr. and Mrs. Eppling and the children for marital problems in 1982. He never made a firm diagnosis but felt Mrs. Eppling might be suffering from bipolar disorder, generally known as manic-depressive disease. He felt she did have an illness and had many of the features of manic-depression. Loss of control is characteristic of manic-depressives; and he prescribed Tergetol, an anti-seizure medication, to help her exhibit better control. He testified that a person with the diagnostic impression he had of Mrs. Eppling (bipolar disorder) might say inappropriate things at social gatherings. He felt the incidents described to him (the Nagle party, etc.) could be either illness or behavioral problems or a character defect.
*819 DAVID CLARK, Ed.D.
Dr. Clark, qualified as an expert psychologist by the court, was appointed by the court during this couple's earlier custody battle to evaluate the parties and report to the court. He saw all the members of the family in August and October of 1986, after the physical separation had occurred and this litigation was already pending. He evaluated Mrs. Eppling by means of a personal interview and the administration of a psychological test (M.M.P.I.). The test showed all her behavior within normal limits with the exception of a tendency toward limited impulse control and acting out. He found nothing in the test or her history to indicate manic-depression. She talked to him about a suicide try, but he didn't find her suicidal. He believed that the episodes of cruel treatment toward Mr. Eppling, who was the only person toward whom she ever exhibited any abnormal behavior, were motivated by jealousy or revenge. He found Mrs. Eppling to be capable of functioning in a normal and appropriate manner.
JAY W. SEASTRUNK, II, M.D.
Dr. Seastrunk, who was qualified as an expert psychiatrist, first saw Mrs. Eppling in November of 1986. Based upon his examination, he concluded that Mrs. Eppling had an atypical bipolar affective disease of long standing as well as a personality disorder. He prescribed lithium but doubted that she had taken it. He hospitalized her for about two weeks in March of 1987 for suicidal tendencies. At that time, he administered a battery of psychological tests; but none of them showed evidence of manic-depression. However, he felt that the lithium being given Mrs. Eppling during her hospital stay might mask the manic symptoms. He gave her a one-month prescription for lithium upon discharge, but she didn't come back until right before the trial in November 1987. Dr. Seastrunk related Mrs. Eppling's behavior to her illness. He testified that manic-depressives would be more likely to lose control or to fly off the handle; he would expect irrational, erratic behavior from them; they tend to be threatening and can be very vindictive; with them, destruction of property is not uncommon; further, it is not uncommon for manic-depressives to do outrageous things and then act as if nothing had happened. He concluded that, while she is aware of what she does and is accountable, she cannot always control what she does: rage takes over.
It is the function of the trial court to evaluate the witnesses and make credibility determinations.
The standard of appellate review as explained in Canter v. Koehring, 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) is that even though the Appellate Court may feel that its own evaluations and inferences are as reasonable, it should not disturb reasonable findings of the trial court when there is conflict in the testimony. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the Appellate Court should not disturb this factual finding in the absence of manifest error, i.e., unless it is clearly wrong.
Greco v. Jordan, 419 So.2d 42, 44 (La.App. 5th Cir.1982). We affirm his judgment on the issue of mutual fault.
THE JUDGMENT OF DIVORCE
The record shows that Mr. and Mrs. Eppling physically separated in October of 1985 and that Mrs. Eppling filed her petition for separation in March of 1986. By the time the matter was tried beginning November 23, 1987, the parties had been physically separated for over two years. Absent a reconciliation, this is sufficient to support a divorce based upon La.R.S. 9:301. There is some testimony to the effect that the parties engaged in one act of sexual intercourse at some point during this two-year period. In order to constitute reconciliation, the parties must intend to reestablish their marriage; and one isolated incident of sexual intercourse is not controlling but is only one factor to be considered. Whipple v. Smith, 428 So.2d 1114 (La.App. 1st Cir.1983), writ den. 433 So.2d 154 (La. 1983). We hold that Mrs. Eppling has *820 failed to meet her burden of proving the affirmative defense of reconciliation.
In addition, this circuit has already approved the practice of granting the judgments of separation and of divorce at the same time. Mathews v. Mathews, 459 So. 2d 546 (La.App.1984). We find no error and affirm the divorce judgment. Notwithstanding our ruling that the divorce judgment was properly granted, we do not find that Mrs. Eppling's appeal is a frivolous one. Other circuits have reached a different result from Mathews on similar facts. Land v. Land, 483 So.2d 186 (La.App. 2d Cir.1986).
We affirm the trial judge in all respects. Patricia Daly Eppling must pay the costs of this appeal.
AFFIRMED.