ARMSTRONG, Judge.
Defendant, Jan Seltzer and plaintiff, Shalom Daniel Seltzer, appeal the trial court’s judgment rendering divorce based on mutual fault.
On January 11, 1988, Dr. Seltzer filed a petition for separation against his wife, Mrs. Seltzer, alleging that her cruel treatment and her inability to spend within the confines of the family budget had rendered their living together insupportable.
On February 26, 1988, Mrs. Seltzer filed an answer and reconventional demand stating that Dr. Seltzer had been guilty of abandonment and mental cruelty towards her and pleading for alimony pendente lite and child support.
On July 7, 1988, judgment was rendered in Mrs. Seltzer’s favor granting her alimony pendente lite and child support.
On September 23, 1988, Dr. Seltzer filed a rule to change custody in which he raised the issue of Mrs. Seltzer’s mental condition. In particular, he stated that Mrs. Seltzer was hospitalized in the psychiatric ward of Touro hospital and accordingly was unable to provide care for the minor children.
On January 17, 1989, Dr. Seltzer filed a supplemental and amended petition for divorce based upon living separate and apart for more than one year. Mrs. Seltzer filed *712 an answer on February 17, 1989, alleging abandonment and adultery.
On March 23, 1989, Dr. Seltzer filed a second supplemental and amended petition alleging that Mrs. Seltzer had committed adultery on December 15, 1988 and on January 6, 1989. On April 19, 1989, Mrs. Seltzer filed her answer to this supplemental and amended petition, along with a memorandum urging that she be excused from fault due to her mental incapacity.
Dr. Seltzer filed a motion in limine to exclude at trial all evidence of the alleged mental incapacity of Mrs. Seltzer because it was not pled with any specificity. The trial court granted Dr. Seltzer’s motion and Mrs. Seltzer took writs. This court granted Mrs. Seltzer’s writs, and she amended her Answer and Petition in Reconvention to plead mental incapacity as an excuse for fault.
Trial terminated and the court ordered a judgment of absolute divorce on the grounds of mutual fault, finding that Dr. Seltzer was at fault for abandoning the matrimonial domicile on January 10, 1988, without justification, and that Mrs. Seltzer was guilty of adultery, which adultery was not excused by mental illness. Permanent care, custody and control of the couple’s two minor children was granted to Dr. Seltzer, with Mrs. Seltzer being granted limited supervised visitation.
From this judgment, both parties appeal.
By her first assignment of error, Mrs. Seltzer argues that the trial court erred in finding that her act of adultery was not excused because of her pre-exist-ing mental illness. The trial court’s finding is supported by fact and law.
Eppling v. Eppling, 537 So.2d 814 (La.App. 5th Cir.) writ denied 538 So.2d 619 (La.1989) involved a case where the trial court declined to excuse Mrs. Eppling’s cruel treatment of her husband because she failed to prove that she was mentally ill. On appeal, the Fifth Circuit Court of Appeal wrote:
Actions that would normally [be] construed as fault contributing to the separation are excused when involuntarily induced by a pre-existing mental illness. Kaplan v. Kaplan, 453 So.2d 1218, 1221 (La.App. 2d Cir.1984), writ den. 458 So.2d 484 (La.1984). However, the mental illness must be shown to have “caused” the behavior which would otherwise constitute marital fault. Credeur v. Lalonde, 511 So.2d 65 (La.App. 3d Cir.1987), writ den. 513 So.2d 822 (La.1987).
The court affirmed the trial court’s finding that Mrs. Eppling had not met her burden of proving mental illness and it never reached the issue of whether her mental illness caused the mental cruelty inflicted on her husband.
In the instant case both parties and all the medical experts concede that Mrs. Seltzer is mentally ill. Therefore Mrs. Seltzer’s burden was limited to proving whether her adultery was caused by her mental illness. Mrs. Seltzer contends that her mental illness caused her to exercise poor judgment in committing adultery.
This is a unique utilization of the mental illness defense against marital fault. All of the cases of which we are familiar have pled mental illness as an excuse for abandonment, cruel treatment or habitual intemperance. See: Credeur v. Lalonde, 511 So.2d 65 (La.App. 3d Cir.), writ denied 513 So.2d 822 (La.1987); Shenk v. Shenk, 563 So.2d 1000 (La.App. 4th Cir.1990); Eppling v. Eppling, supra; Robichaux v. Robichaux, 525 So.2d 321 (La.App. 1st Cir.1988); Asher v. Asher, 521 So.2d 645 (La.App. 1st Cir.1988); Dolese v. Dolese, 517 So.2d 1279 (La.App. 4th Cir.1987); Kaplan v. Kaplan, 453 So.2d 1218 (La.App. 2d Cir.), writ denied 458 So.2d 484 (La.1984); Morrison v. Morrison, 395 So.2d 909 (La.App. 2d Cir.1981); Bettencourtt v. Bettencourtt, 381 So.2d 538 (La.App. 4th Cir.), writ denied 383 So.2d 12 (La.1980); Gipson v. Gipson, 379 So.2d 1171 (La.App. 4th Cir.), writ denied 383 So.2d 799 (La.1980); Anderson v. Anderson, 379 So.2d 795 (La.App. 4th Cir.1979); Courville v. Courville, 363 So.2d 954 (La.App. 3d Cir.), writ denied 365 So.2d 243 (La.1978). The party pleading the defense must meet the burden of proving that the abandonment, cruel treatment or habitual intemperance was *713 induced by mental illness. By her own testimony, Mrs. Seltzer admits that her adulterous affair was induced by her own emotional and sexual needs. When questioned as to why she committed adultery, Mrs. Seltzer replied:
Because it was a whole year later. I had tried to kill myself over my husband. I was aware that you can’t — I realized after nine months of begging him to come back, which was lousy for your self-esteem, that you can’t mourn somebody forever, and I was lonely, and it was around Christmas, and I slept with him a few times ...
Nor does this court find that Mrs. Seltzer proved that her judgment was clouded by mental illness. By all reports, during the period that Mrs. Seltzer admits to engaging in this extra-marital affair, Christmas 1988/early 1989, her mental condition was markedly improved. Mrs. Seltzer’s treating physician, Dr. Meyers, testified that he noted Mrs. Seltzer was making progress in December 1988. By January 1989 he testified that Mrs. Seltzer was not floridly psychotic as she had been in January 1988. He further testified that his records reflect that he had a conversation with Mrs. Spizer, Mrs. Seltzer’s mother, who also found that her daughter’s condition was improved. Overall he said she was better. He admitted that her psychosis was well-controlled during the period that she was engaged in the adulterous affair. Dr. Leblanc, Dr. Seltzer’s medical expert witness, testified that Mrs. Seltzer admitted she began a relationship in January 1989 but terminated it in February due to advice that she received. She did not describe the relationship with a psychotic quality. She explained that she was seeking a supportive relationship and that she was lonely.
Furthermore, the adultery was not an isolated incident but she repeated the act several times and there was testimony at trial that the affair was on-going. The court’s medical expert, Dr. Drell, stated that even a person who has a psychosis would be aware that they committed adultery if it were an on-going extra-marital affair. When confronted with the issue of whether Mrs. Seltzer knew she was having an adulterous affair the medical experts declined to attribute any lack of understanding to her mental illness. In fact Dr. Leblanc responded, “she knew that she was still married at the time” and “she knew she was having an affair.”
Dr. Seltzer reiterates that the voluntary nature of the act of adultery should remove it from the realm of acts committed in the confusion of mental illness. Mrs. Seltzer admitted at trial that the act of adultery was mutual. She expressed no remorse over her extra-marital affair, only that she regretted that it happened at the time when her attorneys advised her it would be detrimental to her case.
We agree with the trial court; Mrs. Seltzer failed to prove that her adultery was induced by mental illness. Nor did she prove that her judgment was clouded by mental illness.
By her second assignment of error, Mrs. Seltzer argues that the trial court’s refusal to allow Dr. Richoux to testify as an expert witness was inequitable because the court allowed Dr. Leblanc to testify as an expert witness for Dr. Seltzer. Although Mrs. Seltzer was able to examine Dr. Drell and Dr. Meyers, she was not allowed to call an independent psychiatrist. Dr. Meyers, who is Mrs. Seltzer’s treating physician, has a clinical practice and opposing counsel questioned his objectivity. Dr. Leblanc, on the other hand, is a seasoned expert witness who has testified on numerous occasions on behalf of the district attorney’s office in criminal prosecutions.
Mrs. Seltzer argues that Dr. Richoux, who is also an experienced expert witness, was needed to balance the testimony of Dr. Leblanc. His testimony would have explained why Mrs. Seltzer could not be held responsible for her act of adultery due to her severe mental illness. The trial court’s refusal to allow Dr. Richoux to testify put Mrs. Seltzer at an unfair disadvantage and deprived the court of valuable testimony regarding how schizophrenia affects human behavior and renders a person incapable of distinguishing between right and *714 wrong with respect to various actions and conduct.
Just two weeks before trial, pursuant to a writ order of this court dated June 22, 1989, Mrs. Seltzer was allowed to amend her answer to allege mental illness for the first time. At trial Mrs. Seltzer called numerous witnesses in an attempt to prove her allegations of mental illness. The trial court denied leave for Mrs. Seltzer to file a third supplemental answer to include Dr. Richoux, who was clearly consulted when Mrs. Seltzer’s treating physician would not testify that her mental illness was causally connected with her adultery. We find that the trial court did not abuse its discretion in this regard.
Dr. Seltzer argues that Dr. Richoux was not presented at trial. If Dr. Richoux had been presented for examination, and had he been excluded, it would have been incumbent upon counsel for Mrs. Seltzer to make an offer of proof of Dr. Richoux as provided for in Article 1636 of our Code of Civil Procedure. None was made. Had a timely proffer been made, this court could then determine whether or not relevant evidence was properly excluded.
Our law is clear and consistent that when a party complains on appeal of improperly excluded evidence, it is incumbent upon that party to proffer that evidence. Failure to do so results in a waiver of the right to complain of the exclusion on appeal. Engineered Mechanical Services, Inc. v. Langlois, 464 So.2d 329 (La.App. 1st Cir.1984), writ denied 467 So.2d 531 (La.1984); Moliere v. Wright, 487 So.2d 587 (La.App. 4th Cir.1984), Burrell v. Sclesinger, 459 So.2d 1195 (La.App. 4th Cir.1984), writ denied 463 So.2d 1320 (La.1984).
In his cross-appeal, Dr. Seltzer contends that the trial court erred in finding him at fault for abandonment. To support a finding of abandonment, the court must find both a withdrawal from the home without cause and a constant refusal to return. Oubre v. Oubre, 466 So.2d 613 (La.App. 5th Cir.1985). He argues that neither were shown in the instant case.
To be at fault for abandonment, the erring party must be found to have left the family domicile without lawful cause, and to have consistently refused to return. Schirrman v. Schirrmann, 436 So.2d 1340 (La.App. 5th Cir.1983), writ denied 440 So.2d 761 and 440 So.2d 764 (La.1984). Further, the non-erring party must be shown to have constantly desired the return of the alleged erring spouse to the marital home. Robichaux v. Robichaux, 525 So.2d 321 (La.App. 1st Cir.1988).
Dr. Seltzer contends that the record shows that he was served with written demand by his wife to leave the family home. She went so far as to throw his clothing and personal property in front of their home, subjecting him to public humiliation. He argues that this was the culmination of instances when Mrs. Seltzer would physically abuse him, both alone and in front of their children. Louisiana law recognizes that a spouse who is the victim of violent and bitter arguments and recriminations, as well as physical attacks has lawful cause to leave the common dwelling. Prattini v. Prattini, 543 So.2d 590 (La.App. 4th Cir.1989). Only Mrs. Seltzer’s self-serving testimony stands to prove that she constantly desired his return.
Relying on Asher v. Asher, 521 So.2d 645 (La.App. 1st Cir.1988), Mrs. Seltzer argues that the trial court was obviously convinced of the severity of her mental illness and therefore concluded that Mrs. Seltzer could not be cast with fault on the basis of cruel treatment towards her husband. She argues that the so-called written demand to which Dr. Seltzer refers was actually a note prepared by himself which he then asked her to sign in the heat of argument. Also she insists that the court accepted her undisputed testimony that she constantly begged for Dr. Seltzer to return to the matrimonial domicile but that he refused to do so.
In Asher, a husband who had abandoned the matrimonial domicile alleged that his wife, who was mentally ill, was guilty of cruel treatment such as verbal abuse, failure to fulfill housekeeping duties, fiscal responsibility and threatening to kill their *715 six-year old daughter and commit suicide. The court held that Mrs. Asher’s actions did not constitute cruel treatment. Citing Leggio v. Leggio, 491 So.2d 440 (La.App. 1st Cir.1986), the court reasoned that mutual incompatibility and general unhappiness with the marital relationship are not lawful causes for leaving the family home. Accordingly, the husband was guilty of abandonment and was at fault.
Much latitude is given to the trial court in deciding discretionary matters and its decisions should not be disturbed unless there is a clear abuse of discretion. City of New Orleans v. New Orleans Canal, Inc., 173 So.2d 43 (La.App. 4th Cir.), writ denied 247 La. 727, 174 So.2d 135 (1965). The court of appeal is mandated to uphold the findings of fact and credibility determinations of the trier of fact absent a showing that such findings are not reasonably based on facts presented at trial. Gordon v. National Union Fire Insurance Co. of Pittsburg, Pa., 449 So.2d 152 (La.App. 4th Cir.1983). The trial court is afforded great weight as to its determination on factual conclusions, reasonable evaluations of credibility, reasonable inference of fact and the demeanor and believability of the witness. Nobile v. New Orleans Public Service Inc., 419 So.2d 35 (La.App. 4th Cir.), writ denied 422 So.2d 424, 426 (La 1982). Absent a finding of manifest or clear and palpable error, these determinations should not be overturned on appeal. Smith v. Borden, Inc., 413 So.2d 701 (La.App. 4th Cir.) writ denied 420 So.2d 171 (La.1982).
For the foregoing reasons, we affirm the trial court’s judgment.
SCHOTT, C.J., concurs in the result.