453 So.2d 1218 (1984)
Floria Sercarz KAPLAN, Plaintiff-Appellee,
v.
Jack Harold KAPLAN, Defendant-Appellant.
No. 16267-CA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1984.
Writ Denied October 26, 1984.
*1219 Gamm, Greenberg & Kaplan by Irving M. Greenberg, Shreveport, for defendant-appellant.
Sockrider & Bolin by H.F. Sockrider, Jr., Shreveport, for plaintiff-appellee.
Before JASPER E. JONES, FRED W. JONES, JR. and NORRIS, JJ.
JASPER E. JONES, Judge.
In this domestic litigation, Jack Harold Kaplan appeals a judgment which awarded him a divorce and custody of his minor son and which awarded his wife Floria Sercarz Kaplan $2,100.00 per month alimony pendente lite and $1,700.00 per month permanent alimony.
Appellant married Floria Kaplan in 1954 and three children were born of the marriage, one of whom was a minor at the time *1220 of the divorce judgment. The family has always lived in Shreveport where appellant practices law.
Mrs. Kaplan rented an apartment to use as a separate domicile in January, 1980 and moved out of the matrimonial domicile. Thereafter she and appellant attempted reconciliation on several occasions for short periods of time but have not lived together since May of 1980.
Throughout most of the marriage Mrs. Kaplan insisted upon a life style which cost more than Mr. Kaplan could afford. She required on several occasions the changing and upgrading of the family home and its furnishings. She demanded the services of a maid and often required two maids, one of whom worked the late evening and night shift. She preferred to eat at restaurants several times weekly and frequently took the children out to eat. She routinely purchased expensive unnecessary clothing and occasionally purchased unnecessary furniture. She frequently overdrew her bank account incurring substantial unnecessary bank overcharges. She demanded expensive vacations and weekend recreation trips. Mr. Kaplan's expenses were also increased by Mrs. Kaplan's frequent illness and the treatment which she required.
Early during the marriage Mrs. Kaplan commenced having disabling migraine headaches for which she sought and obtained medication, some of which were habit forming drugs. She gradually became dependent upon the medication. Mrs. Kaplan's health problems were greatly increased by her depression following her third pregnancy which was unwanted. Following the birth of her third child in February, 1966 she required extensive psychiatric hospitalization in Texas where she received electric shock treatment.
Mrs. Kaplan's drug dependency and depression continued to increase until 1977 when she commenced seeing Dr. Worth Wilkenson, a Shreveport psychiatrist, who diagnosed her mental illness as "depressive reaction." Dr. Wilkenson hospitalized her from March 25 to August 1, 1977. During this lengthy stay in the hospital Mrs. Kaplan discontinued the use of the habit forming drugs which had for many years contributed to her health problems. She continued to suffer from her mental illness. She remained under the treatment of Dr. Wilkenson. She was again hospitalized on several occasions, including a hospitalization for the mental illness from December 29, 1979 until April 19, 1980, with the exception of a two week period between February 7 and February 21. It was during the early part of this hospitalization that she rented the apartment and moved from the matrimonial domicile.
The evidence establishes that throughout the marriage appellant has been a model husband in every respect. He had done his very best to provide his wife with the luxuries of life which she required, even though his attempts to satisfy her has forced him to the brink of bankruptcy. He aided her in taking care of the children. He constantly sought medical treatment for her illnesses and at the recommendation of her psychiatrist participated in lengthy marriage counseling. After Mrs. Kaplan rented the apartment he frequently urged her to return to the matrimonial domicile and though she responded on several occasions she has not returned since May of 1980.
Though Mrs. Kaplan has a splendid husband she complains that he fails to adequately communicate with her and assist her in the solution of her problems. For these reasons she has developed a strong dislike for appellant and avoids being in his presence. She stated the stress of living with him aggravated her mental illness and required her additional hospitalization. She stated she was forced to separate from him to avoid this stress factor and to avoid a return to the use of drugs which she felt she could not resist if she continued to live with him.
The trial judge awarded appellant the divorce on the grounds of living separate and apart for more than one year. The trial judge found Mrs. Kaplan at fault for abandoning the appellant but found the fault excused by her mental illness and awarded Mrs. Kaplan permanent alimony.
*1221 The principal issues presented by this appeal are:
(1) was the finding that Mrs. Kaplan's fault was excused by mental illness correct;
(2) should the trial court have made a finding that appellant was free from fault;
(3) was the alimony pendente lite award excessive;
(4) if Mrs. Kaplan was entitled to the permanent alimony award was the amount of it excessive;
(5) is a reduction of alimony on appeal retroactive;
(6) was the trial judge correct in accruing alimony pendente lite owed under a judgment that was not final;
(7) was appellant entitled to credit on his unpaid alimony for an insurance check given to Mrs. Kaplan which was collected for the loss of Mrs. Kaplan's ring; and
(8) was the attorney fee award against the community for Mrs. Kaplan's attorney authorized by law and if so, was it excessive.
Other incidental issues raised by the litigants in their briefs which merit discussion will be addressed in connection with the discussion of the principal issues.

WAS MRS. KAPLAN'S FAULT EXCUSED
A wife who has not been at fault and has insufficient means for her support is entitled to receive alimony after divorce. LSA-C.C. art. 160. Brannon v. Brannon, 362 So.2d 1164 (La.App. 2d Cir.1978). The wife bears the burden of proving freedom from fault in order to be entitled to alimony following divorce. Sachse v. Sachse, 150 So.2d 772 (La.App. 1st Cir.1963); Brannon v. Brannon, supra. Fault which will deprive a spouse of permanent alimony after divorce must be of such a degree that it would independently constitute a grounds for a separation. Pearce v. Pearce, 348 So.2d 75 (La.1977); Brannon v. Brannon, supra; Vail v. Vail, 390 So.2d 978 (La.App. 2d Cir.1980); Adams v. Adams, 389 So.2d 381 (La.1980). Fault is a question of fact and the trial court's finding on the issue will not be disturbed on appeal absent a manifest abuse of discretion. Pearce v. Pearce, supra.
Actions that would normally be construed as fault contributing to the separation are excused when involuntarily induced by a preexisting mental illness. Courville v. Courville, 363 So.2d 954 (La. App. 3d Cir.1978); Gipson v. Gipson, 379 So.2d 1171 (La.App. 2d Cir.1980); Bettencourtt v. Bettencourtt, 381 So.2d 538 (La. App. 4th Cir.1980); Morrison v. Morrison, 395 So.2d 909 (La.App. 2d Cir.1981).
Dr. Worth Wilkenson, Mrs. Kaplan's psychiatrist since 1977, diagnosed her mental illness as an acute depression reaction with anxiety. He stated that because of Mrs. Kaplan's mental illness she could not live in the family home at the time she abandoned it and refused to return. He testified:
I believe Mrs. Kaplan wanted to cope with the situation she had and I believe she was unable to do it because she had severe depression with a lot of anxiety that she had for a long period of time. I think she tried as hard as she could to cope with everything that she could deal with.
He refused to corroborate Mrs. Kaplan's statement that if she returned to Mr. Kaplan she would again become dependent upon drugs but he did state that the stress she would sustain as a result of a return to Mr. Kaplan and the family home would again cause her to become mentally ill. He concluded, from a medical position, that her living in the family home created a stressful situation which she should avoid. Dr. Wilkenson was of the opinion, as of the time of trial, that Mrs. Kaplan's mental illness was arrested but not cured and that a return to a stressful situation would again cause her to be ill.
The appellant produced no medical testimony to refute the testimony of Dr. Wilkenson that his wife's abandonment of him and the family home was caused by her mental illness.
*1222 The testimony of Mrs. Kaplan, viewed in the light of her extensive lengthy mental illness, strongly corroborated by Dr. Worth Wilkenson, is substantial evidence which supports the trial court's factual finding that Mrs. Kaplan's fault was excused by her mental illness. Findings of fact by the trial judge when supported by substantial evidence cannot be disturbed on appeal.
Mrs. Kaplan is entitled to permanent alimony.
SHOULD THE TRIAL JUDGE HAVE MADE AN ADJUDICATION THAT APPELLANT WAS FREE FROM FAULT
Appellant contends the trial court erred in not including a determination that he was free from fault in the divorce judgment. The record reveals and the trial court found appellant free from fault in causing the dissolution of the marriage; however, the trial judge refused to include this finding in the judgment because appellant's fault was not at issue since he was not seeking alimony.
In brief appellee cites two First Circuit cases supporting the trial court's decision not to include the fault determination on the part of appellant in the judgment. Brady v. Brady, 388 So.2d 57 (La.App. 1st Cir.1980); Latino v. Latino, 400 So.2d 1152 (La.App. 1st Cir.1981). We find that these two cases are contrary to the supreme court decision in Thomason v. Thomason, 355 So.2d 908 (La.1978). There the court found a wife entitled to a divorce because of her husband's felony conviction and further found her guilty of fault because of her adultery even though she had not sought alimony. This court affirmed a trial court adjudication that the wife was not free from fault in a judgment wherein she was awarded a separation on the grounds of her husband's adultery. Since she necessarily had not sought permanent alimony in her separation action, the determination of her fault was made solely to preclude her from seeking permanent alimony in a future divorce action. Vail v. Vail, supra.
This circuit, citing Thomason v. Thomason, supra, stated the trial court should decide the fault issue in the separation or divorce suit in the interest of judicial efficiency and economy. Jordan v. Jordan, 408 So.2d 952 (La.App. 2d Cir.1981). If a spouse who does not seek alimony in the divorce proceedings should later decide that he or she is in need of alimony, much of the case would have to be retried at the later date if the fault issue is not initially determined. It is desirable to decide the issue during the initial proceedings while the facts establishing that party's fault or lack thereof are still relatively fresh and more easily proved.
We conclude appellant is entitled to the inclusion of a finding that he was free from fault in the divorce judgment.

WERE THE ALIMONY PENDENTE LITE AND THE PERMANENT ALIMONY AWARDS EXCESSIVE
A spouse who does not have sufficient income for maintenance pending suit for a separation or a divorce is entitled to a sum from the other spouse proportioned to the needs of the claimant spouse and the means of the other spouse. LSA-C.C. art. 148. The payments which the husband is required to make on outstanding community obligations are to be considered in determining the amount of alimony pendente lite he is capable of paying. Stansbury v. Stansbury, 258 So.2d 170 (La.App. 1st Cir. 1972).
Where the needs of the wife exceed the husband's ability to pay, the alimony pendente lite should be fixed at a sum which will be fair to both parties. Frederick v. Frederick, 379 So.2d 808 (La.App. 4th Cir.1980).
The appellant contends the alimony pendente lite award in the amount of $2,100.00 per month is excessive.
The trial judge, in making this award, found that when appellant's income from the practice of law for the years 1979 through 1982 was averaged, it reflected that appellant had an annual gross income *1223 from the practice of law of approximately $61,000.00. The trial judge further found in the year 1982 that the appellant had income from other sources in the amount of approximately $11,000.00. (We note most of this other income was from a non-repetitive source.) The trial court further pointed out that in the first part of 1983 the appellant was only grossing $3,700.00 a month. Based upon these gross income figures, the trial judge made the alimony pendente lite award of $2,100.00 per month.
We find the trial court made an excessive award because it failed to consider the substantial community debts and fixed expenses which the appellant is required to pay. When these factors are given the consideration to which they are entitled, it is apparent the appellant cannot possibly pay the alimony pendente lite award, provide a home for himself and his minor son[1] and pay other required obligations.
The evidence establishes the appellant owes approximately $175,000.00. Not including his house note and car note which total the sum of $62,600.00, he owes borrowed money in the sum of $73,803.69. Most of these debts are bank obligations of long standing, having been renewed on numerous occasions. A substantial part of this indebtedness represents debts which appellant incurred in an effort to provide his wife with the life-style which she required. The appellant has filed in this record an exhibit which reflects his gross income for 1980, 1981 and 1982, the three year average of which reflected an annual gross income of $60,619.00. When the gross income is reduced by state and federal income taxes for each of these three years, they reflect an after-tax average income of approximately $48,000.00, or the sum of $4,000.00 per month. These income and tax amounts are substantially corroborated by copies of appellant's 1980, 1981 and 1982 federal tax returns.
We have reviewed the appellant's Affidavit of Necessary Expenses and extracted therefrom the following essential monthly obligations which appellant is required to pay:

House note 504.61
Car note 221.25
Auto & house insurance 266.90
Monthly auto expense 170.00
Dial Finance 100.00
Mastercard 100.00
Real estate taxes 33.00
Hospital & major med. ins. 271.00
Utilities 239.21
Interest costs on numerous debts
 excluding the interest included
 within the house & car note 917.42
Monthly payment on $23,000 unpaid
 1982 income tax obligation 500.00
 ________
TOTAL $3,323.39

A review of the above list reflects that it includes no sum to be paid on the principal of the extensive bank notes owed by the appellant, nor does it include any sum for food and clothing for appellant and his son who was a minor at the time the alimony judgment was rendered and for whom he was responsible until February, 1984 when the child became 18. In spite of the omissions of these essential expenses which the appellant is required in some manner to pay, there only remains from the appellant's monthly net of $4,000.00, after the payment of the expenses listed above, the sum of $676.61 available for payment of alimony pendente lite.
While this court cannot attempt to rearrange the appellant's fixed expenses and debt structure, it appears his financial position could be improved by sale of the community home.
It is impossible for appellant to pay $2,100.00 a month alimony pendente lite and for that reason we reduce the monthly pendente lite alimony to the sum of $750.00.
The appellant also complains the permanent alimony award of $1,700.00 is excessive and more than he is able to pay. LSA-C.C. art. 160 provides that the obligations of the paying spouse are to be considered in reaching a determination of the *1224 amount of permanent alimony.[2] While the wife has adequately established needs within the guidelines of permanent alimony to support the $1,700.00 award, we reduce the permanent alimony award to the sum of $750.00 for the same reasons that we reduced the alimony pendente lite award. The appellant's income, fixed expenses and debt structure reveal that he can pay no more than the sum of $750.00 each month for permanent alimony.
Appellant contends Mrs. Kaplan has the ability to work and that her earning ability should be considered under Article 160 as a factor requiring a reduction in her permanent alimony. We find Mrs. Kaplan's mental illness, together with her hypertension, migraine headaches and other health problems, result in her having no earning ability within the contemplation of Article 160. We further observe that she will need any sum that she may be able to earn to supplement the permanent alimony which we have fixed.

IS THE REDUCTION OF ALIMONY ON APPEAL RETROACTIVE
Appellant seeks to have this court reduce the alimony awards retroactive to the date of the trial court judgment. It is well settled that an appellate court judgment modifying an alimony award can have prospective effect only. Frederic v. Frederic, 302 So.2d 903 (La.1974); Bruner v. Bruner, 373 So.2d 971 (La.App. 2d Cir. 1979); Hamiter v. Hamiter, 419 So.2d 517 (La.App. 2d Cir.1982).
Appellant is not entitled to a retroactive reduction of alimony.
Mrs. Kaplan argues in brief that the issue of the correctness of the alimony pendente lite is moot and should not be here considered by us. She cites Hamiter v. Hamiter, supra, wherein we declined to consider the contention that the alimony pendente lite was excessive because the judgment of divorce was not appealed and was final and for this reason alimony pendente lite had terminated and been replaced by the permanent alimony award.
The appellant appealed the entire judgment and did not limit his appeal to issues involving alimony. Appellant in brief seeks to have the judgment granting the divorce affirmed. Appellant's permanent alimony obligation becomes effective when the divorce becomes final. Until then appellant remains liable for alimony pendente lite and the issue of its correctness remains viable even though our reduction of it has only prospective effect.
WAS THE TRIAL COURT CORRECT WHEN IT ACCRUED AND MADE EXECUTORY PAST DUE ALIMONY PENDENTE LITE WHEN THE JUDGMENT WHEREIN IT WAS FIXED WAS NOT FINAL
The trial judge, in his written reasons for judgment rendered on August 11, 1983, made the monthly alimony pendente lite award effective on August 18, 1982, which was the date Mrs. Kaplan commenced this litigation by instituting a suit for a separation containing a demand for alimony pendente lite. A judgment was signed pursuant to the written reasons on October 7, 1983 and on this date Mrs. Kaplan filed a motion to accrue and make executory the unpaid alimony pendente lite from August 18, 1982.[3] The appellant filed a motion for new trial and an exception of prematurity *1225 directed at the rule to accrue. On October 28, 1983 a judgment was rendered denying the motion for new trial, rejecting the plea of prematurity and accruing past due alimony pendente lite from August 19, 1982 to October 19, 1983.
The appellant contends this accrual judgment is invalid because the correctness of the judgment which set the alimony was the subject of his motion for a new trial at the time the rule to accrue was being considered by the court. We note that the motion for new trial was denied at the same time the judgment to accrue was rendered. The contention that a pending motion for the new trial suspended the execution of the alimony judgment was rejected by us in Fontana v. Fontana, 426 So.2d 351 (La.App. 2d Cir.1983). We there stated that the nature of an alimony judgment requires that it be immediately effective and pointed out that it's execution is not suspended by appeal. LSA-C.C.P. art. 3943.
The appellant also argues the accrual judgment is invalid because the signed judgment which fixed the alimony was not approved as to form by his attorney before the judge signed it as required by court rules of Caddo Parish. During the interim between written reasons for judgment, which were filed on August 11, 1983, and October 7, 1983 when the judgment was signed, numerous unsuccessful attempts were made to secure written approval of counsel for the litigants to the form of a judgment to be submitted to the judge for his signature. Under these circumstances the trial judge did not abuse his discretion when he signed the judgment without the written approval of appellant's attorney. The trial judge has the responsibility of controlling his docket and disposing of the cases upon his docket. His disregard of a court rule which was unjustifiably delaying the progress of the case does not invalidate the judgment signed in violation of the court rule.
WAS APPELLANT ENTITLED TO CREDIT ON HIS UNPAID ALIMONY PENDENTE LITE FOR AN INSURANCE CHECK HE HAD GIVEN TO MRS. KAPLAN WHICH WAS COLLECTED FOR THE LOSS OF MRS. KAPLAN'S RING
Appellant contends the trial court erred in not allowing a setoff against the alimony he owed for the proceeds from an insurance policy he turned over to Mrs. Kaplan. The proceeds arose from a claim Mrs. Kaplan filed for a lost ring. Appellant paid for the policy.
This court recently faced a similar issue in West v. West, 438 So.2d 706 (La.App. 2d Cir.1983). There the trial court allowed the ex-husband a setoff against the alimony he owed for funds the ex-wife withdrew from a community bank account. In ruling the trial court erred in allowing the setoff, we stated:
The concept of compensation or set-off is provided for in La.C.C. Arts. 2207-2209. In order for compensation or set-off to be applicable, there must be a contemporaneous existence of distinct debts, each equally liquidated and demandable. Hartley v. Hartley, 349 So.2d 1258 (La.1977). An essential prerequisite to determining whether or not a plea of compensation is applicable to a claim is the determination of the liquidity of the claim. While it is clear from the facts presented that Mr. West has a potential claim against Mrs. West for community funds, which is very likely to be contested, that claim is properly determined in a partition of the community property, rather than as a defense to a claim for unpaid alimony. Hartley v. Hartley, supra; Hamilton v. Hamilton, 421 So.2d 291 (La.App. 1st Cir.1982); Thomas v. Thomas, 400 So.2d 1120 (La. App. 1st Cir.1981); Castille v. Castille, 358 So.2d 1002 (La.App. 3rd Cir.1978); Dees v. Dees, 382 So.2d 1057 (La.App. 2d Cir.1980). Based on the rule of law enunciated in the aforementioned cases, the trial court was in error in finding that compensation or set-off was available to Mr. West to offset or reduce the *1226 debt owed to Mrs. West for unpaid alimony. (footnotes omitted).
The insurance check was probably community property and any claim appellant has against Mrs. Kaplan related to her use of the funds from this check should properly be decided in the community property partition. It is possible that at this time these funds could be adjudicated Mrs. Kaplan's separate property. We find no abuse of discretion in the trial court's not allowing the setoff against the alimony pendente lite.
WAS THE JUDGMENT AGAINST THE FORMER COMMUNITY EXISTING BETWEEN THE LITIGANTS IN FAVOR OF MRS. KAPLAN FOR HER ATTORNEY'S FEES AUTHORIZED BY LAW AND IF SO WAS IT EXCESSIVE
The appellant argues that his wife's attorney fees are not community obligations because LSA-C.C. art. 2360 defines community obligations as those incurred by a spouse for the common interest of the spouses or for the interest of the other spouse.[4] He contends the attorney's fees were not incurred for the interest of both spouses nor for his interest, but on the contrary, were incurred for services rendered against his interest.
The argument has no merit because the wife's attorney's fees have been specifically recognized as a community obligation by the terms of LSA-C.C. art. 159 which reads in pertinent part as follows:
If a community property regime exists on the date of filing of the original petition in the action in which the judgment of divorce is rendered, the judgment of divorce carries with it the dissolution of the community, which dissolution is retroactive to the date on which the original petition in the action was filed, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorney fees and costs incurred by a spouse in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. (emphasis supplied).
The record contains detailed time records of Mrs. Kaplan's attorney which fully support the attorney fee award made against the community and the award is not excessive.
We order the monthly alimony pendente lite award reduced to $750.00 and the monthly permanent alimony award reduced to $750.00. We further amend the judgment by adding to it the following paragraph:
"IT IS ORDERED that Jack Harold Kaplan is free of fault contributing to the dissolution of the marriage."
As amended the judgment signed October 7, 1983 is affirmed.
We affirm the judgment signed October 28 which accrued past due alimony pendente lite.
All costs of appeal are assessed equally to the litigants.
NOTES
[1] We note this child became 18 in February, 1984, while this case was pending on appeal.
[2] LSA-C.C. Art. 160 provides in pertinent part as follows: "In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; and any other circumstances that the court deems relevant."
[3] The judgment gave appellant credit against alimony pendente lite for sums he had given Mrs. Kaplan for her support since August 18, 1982.
[4] Art. 2360. Community obligation

An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation.