672 So.2d 944 (1996)
Fannie M. Reynolds, Wife of James P. CALDWELL
v.
James P. CALDWELL.
No. 95-CA-963.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1996.
Rehearing Denied May 17, 1996.
*945 William H. Daume, Gretna, for Plaintiff/Appellant.
Mark J. Doherty, New Orleans, for Defendant/Appellee.
Before GAUDIN and GOTHARD, JJ., and REMY CHIASSON, J. Pro Tem.
GOTHARD, Judge.
The sole issue presented by appellant for our review in this matter is whether the trial court erred in its determination that Fannie Reynolds Caldwell was at fault in the breakup of the marriage which existed between her and James Caldwell for twenty-nine years. For reasons that follow, we reverse the judgment of fault.
This litigation began on September 7, 1993 with the filing of a petition by Fannie Caldwell seeking a divorce pursuant to LSA-C.C. art. 102[1]. The petition also asserts that Mr. Caldwell has a "violent temper" and requests a restraining order. Mr. Caldwell answered the petition and made a reconventional demand in which it is asserted that Mrs. Caldwell abandoned him. In due course, the parties reached a consent agreement on various interim matters, which was reduced to a written judgment on November 23, 1993.
On March 14, 1994, James Caldwell moved for a judgment of divorce based on the fact that one-hundred-eighty days had elapsed from the date of filing of the petition for divorce by Mrs. Caldwell. A hearing on that motion was held on August 31, 1994, after which the trial court rendered a judgment of divorce which states: "Said divorce being granted on the mutual fault of the parties". That judgment was not appealed and is now final.
On October 11, 1994, Fannie Caldwell filed a rule to set permanent alimony asserting she was not at fault. Accordingly, a hearing on the issue of fault was conducted on May 11, 1995. After the hearing, the trial court found mutual fault, finding that Mr. Caldwell was an alcoholic during the course of the twenty-nine year marriage, and was, on occasion, abusive. However, the court also found that Mrs. Caldwell had suddenly abandoned Mr. Caldwell on August 26, 1993 without just cause. Mrs. Caldwell appeals the judgment of May 11, 1995, insomuch as it finds her at fault.
As previously stated, the written judgment of August 31, 1994 grants a divorce on the ground of mutual fault. Although the judgment declares the ground for the divorce is mutual fault of the parties, the transcript of the proceedings clearly shows the judgment was based on a finding that the parties had lived separate and apart for one-hundred-eighty days. We believe the reference to fault in the written divorce judgment was included in error. It is clear the judgment was a no-fault divorce judgment.
Traditionally, a judicial determination of fault in a separation and divorce proceeding was determinative of the issue of fault for permanent alimony. See Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Fulmer v. Fulmer, 301 So.2d 622 (La.1974). However, the erroneous declaration of a finding *946 of mutual fault of the parties in the divorce judgment does not preclude the parties in the instant case from litigating fault for the purpose of a determination of entitlement to permanent alimony, even though the divorce judgment was not appealed and is now final.
Fault was not litigated at the time of the divorce hearing. It appears that the intent of the parties was to continue the consideration of the issue of fault, for the purpose of permanent alimony, until such time as it may become necessary. In fact, there were no allegations of fault made by either party which would be sufficient to state a cause of action for divorce under current law. With the repeal of LSA-C.C. art. 138, fault, for purposes of divorce, is limited to adultery or conviction of a felony. Thus, the only valid remaining grounds for a divorce are living separate and apart for one-hundred-eighty days, adultery and conviction of a felony. LSA-C.C. art. 103. However, fault, for purposes of entitlement to permanent alimony, is broader.
LSA-C.C. art. 112 A(1) provides, in pertinent part:
When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income.
Since the statutory law does not define fault which would deny permanent alimony, legal fault must be determined according to the prior jurisprudential criteria. Allen v. Allen, 94-1090 (La. 12/12/94), 648 So.2d 359, at 362. In concurring with the result reached by the majority in Allen, Justice Kimball explained: "....the fault grounds for post divorce alimony are synonymous with the fault grounds from the former law of separation and divorce because the authorities establishing the judicially created definition of fault for purposes of post divorce alimony have not been overruled." Allen, supra, at 365 (Kimball, J., concurring in the result). Accordingly, we look to established jurisprudence to determine the correctness of the trial court's decision in the matter before us.
Legal fault consists of serious misconduct, which is a cause of the marriage's dissolution. Vicknair v. Vicknair, supra. Fault contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties or responsibilities. Pearce v. Pearce, 348 So.2d 75 (La.1977); Skannal v. Skannal, 25467 (La. App. 2 Cir. 1/19/94) 631 So.2d 558; writ denied 94-0697 (La. 5/13/94) 637 So.2d 1067.
Abandonment was a ground for separation under former LSA-C.C. art. 138, and still constitutes legal fault for the purpose of preclusion of a party from permanent alimony. Skannal, supra. The elements necessary to prove abandonment as provided in the former LSA-C.C. Art. 143 were:
1. the party has withdrawn from the common dwelling;
2. the party left without lawful cause; and
3. the party has constantly refused to return to live with the other.
At trial both parties testified. Mr. Caldwell stated that his wife moved out of their home on August 26, 1993, after a confrontation between the two about unpaid bills, and has not returned. Mr. Caldwell asserts that he did not threaten his wife nor ask her to leave. He stated that he drinks two or three beers a day when he is not working on the weekends, but admitted that occasionally he has consumed as much as a case of beer in one weekend. He also admitted he struck his wife in the early years of their marriage, but denied any recent violence toward her. He further stated that he did not threaten his wife, and was not aware that she was afraid of him.
Mrs. Caldwell testified that her husband is an alcoholic who drinks from one to three cases of beer every weekend. She stated that her husband was physically abusive in the early years of their marriage and continued to be mentally abusive. She also stated that he physically abused the children, a fact that he denies. She stated that she left the matrimonial domicile in August, 1993 because she had a very unhappy marriage, and because *947 she was afraid her husband would again become abusive toward her.
Both parties testified that they had many serious conflicts over money. It appears from the testimony that Mrs. Caldwell continued to support the couple's two daughters even after the women became adults. Mrs. Caldwell agreed with Mr. Caldwell that the final argument was about money and bills. Mrs. Caldwell testified that in the course of the argument, Mr. Caldwell threatened her with violence, so she left.
After hearing all of the testimony, the trial court rendered a judgment finding mutual fault stating:
...(B)ased on their testimony, I find that even though it was a marriage that endured some twenty-eight or twenty-nine years, seemed (sic) to be a very rocky marriage from the start. There's been allegations of physical abuse as well as excessive use of alcohol which existed throughout the marriage on the part of Mr. Caldwell. However, the testimony fails to indicate that this physical abuse was something that was maintain (sic) throughout the duration of the marriage and it appears that whatever physical abuse there might have been somehow ended some five or six years prior to the ending of the marriage. And I've also heard testimony that Mrs. Caldwell, herself, seemed to spend rather excessively according to the testimony. Whether this was excess spending or whether it was within reason, is something that I am unable to determine. However, I do find it's somewhat unreasonable that Mr. Caldwell would not have been aware of the existence of these type of bills, especially when they amounted to over a fifty thousand dollars of(sic), what was regarded as, credit card bills. And these bills, subsequently, were being sent to a post office box rather than to the home of the parties. The testimony was that Mrs. Caldwell left the matrimonial domicile on August 26th of 1993, as a result of Mr. Caldwell's refusal to attend her mother's funeral. However, that testimony was somewhat contradicted afterwards because I later understood that the mother of Mrs. Caldwell had died sometime prior to that. And the testimony of Mr. Caldwell was that he returned home one evening and found that Mrs. Caldwell had left a stack of credit cards on the table. Therefore, I find that Mr. Caldwell contributed to the disillusion of the marriage, because I believe the allegations of the physical abuse that (sic) they existed throughout the duration of the marriage. Plus, I'm inclined to believe that there was some excess use of alcohol on the part of Mr. Caldwell, which certainly didn't contribute to the well being of the marital situation. However, I find that Mrs. Caldwell, although she had endured or had put up with, for the lack of better term, the conditions that existed during this marriage, I find that her leaving the matrimonial domicile on August 26, 1993 was without just cause.
To justify leaving the common dwelling, the withdrawing spouse must make a showing which is substantially equivalent to a cause giving rise to grounds for separation under the former LSA-C.C. art. 138. It is apparent from the record that this wife was subjected to physical and psychological abuse by the husband throughout the marriage. Based on the extreme level of matrimonial discord and the threat of violence, we find the trial court erred in finding that Mrs. Caldwell had no just cause to leave the common dwelling. See Prattini v. Prattini, 543 So.2d 590 (La.App. 4 Cir.1989).
We are mindful of the discretion afforded the trial court in factual determinations in these matters. Mabry v. Mabry, 522 So.2d 699 (La.App. 5 Cir.1988). Our quarrel is not with the factual findings, but rather with the legal determinations of the trial court. We believe that just cause existed for Mrs. Caldwell's action in leaving the common dwelling. Consequently, we find the trial court erred as a matter of law in finding Mrs. Caldwell was guilty of legal fault sufficient to cause the break-up of the marriage. For the foregoing reasons, we reverse the judgment and remand the matter for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] A divorce shall be granted upon motion of a spouse when either spouse has filed a petition for divorce and upon proof that one hundred eighty days have elapsed from the service of the petition, or from the execution of written waiver of the service, and that the spouses have lived separate and apart continuously since the filing of the petition.

The motion shall be a rule to show cause filed after the one hundred eighty days have elapsed.