ON REHEARING

laDALEY, Judge.
In this proceeding for permanent alimony, appellant Milton Brehm appeals the trial court’s finding that his wife was free from fault in the breakup of their marriage[1]. On appeal, he cites as error the trial court’s failure to find that she either abandoned the marital domicile, or that she was guilty of post separation fault. After thorough review of the record and applicable law, we find that the trial court erred in finding Mrs. Brehm free from fault, and reverse the trial court’s judgment.
The parties, Mr. Brehm and Carmela Brehm, were married for approximately 30 years, and had four daughters, all of whom were of majority at the time of this divorce suit. The record shows that Mrs. Brehm left the matrimonial domicile in ^August, 1993. She filed a Rule to Show Cause why Divorce Should Not be Granted and Motion for Permanent Alimony on January 13, 1994. A judgment of divorce was granted on October 24, 1994, reserving the issue of alimony. The trial on alimony took place on August 28-31, 1995. The trial court found that both parties were free from fault in the marriage’s breakup. The trial court issued written reasons for judgment, which read as follows:
Under the provision of Louisiana Civil Code Article 112, the spouse who seeks alimony after divorce must be free of fault in the breakup or dissolution of the marriage. Therefore the issues regarding freedom from fault must be an. initial determination in these proceedings and prior to an award of permanent alimony....
From testimony and evidence presented at trial, the marriage appeared to be a normal and healthy one during the first ten years. However, the testimony varies regarding the stability of the marriage during its later years.
On one hand there is testimony that Mr. Brehm was a very controlling individual who placed severe limitations on his wife, insofar' as things she could and could not do within their own home. There is further testimony that Mrs. Brehm suffered from constant verbal abuse by her husband as well. And that her husband had drawn an imaginary line in their marital bed which she was forbidden to cross. Overall the testimony suggests that in August of 1993, Mrs. Brehm had reached the breaking point where she could no longer live under such conditions. She had in effect reached the point where she had developed a “Somatiform [sic] Disorder” which affected her mental and physical well being. This condition ultimately forced her to leave the marital domicile according to her ' testimony.
On ’ the other hand there is testimony that early in the marriage, Mr. Brehm was told by his wife that she no longer loved him. Other testimony suggests that the parties had no visible or unusual problems during the marriage. The parties exercised by walking together and engaged in other various activities together. Their marriage appeared to be a happy and ideal one up until the day Mrs. Brehm left the matrimonial domicile in August of 1993. Although she had previously left the home in July of 1993, she returned within twenty-four hours of leaving.
There is further testimony that during her August departure, Mr. Brehm nor them children knew her whereabouts nor understood her reason for leaving the matrimonial domicile so suddenly. This unannounced departure caused Mr. Brehm to *379 undergo severe stress as a result of not knowing where his wife had gone.
Upon her brief return to the family home, Mrs. Brehm proceeded to break all of the family china and set her wedding dress on fibre. The expert testimony suggests that this type of behavior was a symbolic act of seeking release and relief from “marital maladjustment”.
This Court finds it inconceivable that the symptoms which were manifested by Mrs. Brehm, according to expert testimony, resulted from a healthy or normal marriage. Obviously, there was a deterioration that took place during the course of this marriage. The Court is unable to determine Lfrom the evidence and testimony presented, if the breakup of the marriage is the fault of either of the parties of if perhaps it is merely the result of the everehanging roles, responsibilities, and expectations of spouses who grow apart rather than together as a basic unit of our society.
Therefore, it is the finding of this Court that the defendant, Milton L. Brehm, Jr. as well as the plaintiff, Carmela C. Brehm, are free of fault in causing the dissolution of the marriage.
The appellant argues that the court should have found that Mrs. Brehm abandoned the matrimonial domicile in August of 1993, and was therefore at fault in the marriage’s breakup. The appellant further contends that her acts of breaking the china and setting her wedding dress on fire were acts of post-separation cruelty, constituting fault sufficient to preclude her entitlement to permanent alimony. In her appellate brief, Mrs. Brehm argues that any actions by her that would constitute fault should be excused by her mental condition at the time of her departure. She does not appeal the court’s finding that Mr. Brehm was free from fault.
In actions for alimony, much discretion is vested with the trial court’s evaluation of evidence on the basis of the credibility of witnesses. Mabry v. Mabry, 522 So.2d 699 (LaApp. 5 Cir.1988).
ABANDONMENT
It is undisputed that Mrs. Brehm left the matrimonial domicile in August of 1993 and refused to return, and has in fact never returned to live there.
Abandonment consists of the spouse’s withdrawal from the common dwelling without lawful cause, and that spouse’s constant refusal to return. Caldwell v. Caldwell, 95-963 (La.App. 5 Cir. 3/13/96), 672 So.2d 944.
Actions that constitute abandonment may be excused by the other spouse’s legal fault, such as cruel treatment towards the leaving spouse. Caldwell v. Caldwell, supra; Harrington v. Montet, 93-984 (La.App. 3 Cir. 3/2/94), 634 So.2d 1302; Finch hv. Finch, 479 So.2d 473 (La.App. 1 Cir.1985). Also, actions that would normally be construed as fault are excused when involuntarily induced by a preexisting mental illness. Eppling v. Eppling, 537 So.2d 814 (La.App. 5 Cir.1989), writ den. 538 So.2d 619 (La.1989); Credeur v. Lalonde, 511 So.2d 65 (La.App. 3 Cir.1987), writ den. 513 So.2d 822 (La.1987); Kaplan v. Kaplan, 453 So.2d 1218 (LaApp. 2 Cir.1984), writ den. 458 So.2d 484 (La.1984); Bettencourtt v. Bettencourtt, 381 So.2d 538 (La.App. 4 Cir.1980), writ den. 383 So.2d 12 (La.1980); Courville v. Courville, 363 So.2d 954 (La.App. 3 Cir.1978), writ den. 365 So.2d 243 (La.1978).
Giving the trial court’s factual finding that neither spouse was at fault in the breakup of this' marriage, this court must consider the jurisprudence on the issue of abandonment and answer the following questions. Was Mrs. Brehm justified in leaving the matrimonial home? Did Mrs. Brehm’s mental condition excuse her abandonment? Did Mr. Brehm’s conduct, while not reaching the level of legal fault as determined by the trial judge, excuse Mrs. Brehm’s abandonment?
Mrs. Brehm presented the testimony of Dr. Brian Jordan, a clinical psychologist who treated her in October, 1994. He stated that Mrs. Brehm had been referred to him from a certified clinical social worker who treated her at a local mental health center. Dr. Jordan detailed the history of Mrs. Brehm’s marriage as she related it to him. He said that from nearly the beginning of their mar *380 riage, Mrs. Brehm told him that Mr. Brehm belittled her, made her feel inadequate, never let her express her opinions, and caused her to have low self esteem and depression. Mrs. Brehm related an extensive history of somatic complaints, physical manifestations of pain (gastrointestinal, headaches, muscle aches), for which doctors could find no physical causes. She told him that she had attempted several separations before she finally left, because he always coerced her into returning. Mrs. Brehm also said that |6in 1966, she had seen a psychiatrist (Dr. Glynn Ruffin) for depression, because she felt she couldn’t meet her husband’s expectations. She discontinued treatment at her husband’s objections.
As part of his treatment of Mrs. Brehm, Dr. Jordan administered a battery of psychological and personality tests. The test results indicated that the patient was- still holding a good deal of anger and resentment towards her husband and the marital relationship, but that her somatic complaints had decreased somewhat since the separation. Dr. Jordan stated that his diagnosis was somatic disorder in partial remission and marital maladjustment. This diagnosis concurred with the diagnosis of Constance Wade, a clinical social worker who treated Mrs. Brehm in Florida. Somatoform disorder is listed in the DSM-3 handbook, a tool of mental health counselors. Dr. Jordan described the somatoform disorder as Mrs. Brehm’s reaction to twenty-seven years of a dysfunctional, conflict-ridden marriage with her husband. Dr. Jordan said that Mrs. Brehm felt that she could never please her husband, and as a result, felt that she was a failure and not a good person. He stated that her abrupt departure from the family home, unprepared and unpacked, is very consistent with a woman who felt she had no alternative but to leave. Dr. Jordan said that Mrs. Brehm left the home to preserve her own emotional stability and sanity.
Both parties and their children testified at the hearing. Mrs. Brehm testified that her husband criticized how she performed most household tasks. She testified that he did not like her family and thus the couple did not socialize with them, despite her wish to do so. She said that Mr. Brehm constantly berated her and belittled her in front of the children and other family members and friends. Mrs. Brehm stated that he made her feel that she could never do anything right and that everything was always her fault. When asked why she stayed in the marriage so long, she replied that|7she grew up in an Italian Catholic home where she was raised to do everything she could to please her husband.
Mrs. Brehm said that she finally reached a breaking point around July or August, 1993, because she was unable to stand his controlling behavior any longer. She said that if she had stayed in the marriage, she would have died. In August, 1993, she left the home to stay with relatives in Florida. While she was in Florida, she sought counseling from several women’s shelters and other health care professionals, as was corroborated by her medical records and Dr. Jordan’s testimony.
Mr. Brehm testified that he believed he and his wife had a good marriage. The couple both worked but participated in many activities together, such as walking, going places in their camper, and redoing parts of their home. He testified that he had been a loyal and devoted husband. He had provided a good home for his wife and children. Mr. Brehm corroborated Mrs: Brehm’s testimony regarding his interference in or supervision of her performance of cooking and housecleaning, but stated that he was only trying to show her how to save energy and money. He also stated that the name calling, and belittling things he said to his wife were only jokes, and he did not realize that she took him seriously.
The Brehms’ four daughters testified, as did two of Mrs. Brehm’s sisters. Mrs. Brehm’s version of her married life was supported by the testimony of one daughter and her two sisters. Mr. Brehm’s perceptions were supported by the other three daughters.
The trial court was unable to determine if the breakup of the marriage was the fault of either party, suggesting that the breakup was, “merely the result of the everchanging roles, responsibility and expectations of *381 spouses_” However, a spousejgseeking permanent alimony under LSA-C.C. art. 112 bears the burden of proving freedom from fault in the breakup of the marriage, and necessitous circumstances.
We find that Mrs. Brehm failed in her burden of proof that she was not at fault. The trial court found that Mr. Brehm was not at fault and this finding has not been appealed. Given the finding that Mr. Brehm is free from fault Mrs. Brehm cannot rely on Mi\ Brehm’s fault to justify her abandonment. His behavior, while unpleasant to Mrs. Brehm, did not rise to the level of a “continuous pattern of mental harassment” as in the Harrington case, supra.[2]
It appears to this Court that the parties’ main complaint was irreconcilable differences. The trial court’s reasons for judgment support this finding. The parties’ testimony makes apparent that they did not communicate to each other their thoughts and desires regarding the marriage itself. Mrs. Brehm appeal’s to have suffered in silence, never telling her husband about all of the things in them marriage that made her unhappy; instead, she internalized her feelings, which very likely produced the somato-form complaints of pain and illness. Meanwhile, Mr. Brehm was likely unaware of or ignored his wife’s unhappiness and depression. Mrs. Brehm testified that Mr. Brehm was controlling and manipulative, but when confronted in cross examination as to what actions he took to attempt to control her she explained that “controlling is a very slow and manipulating — very quiet process. You don’t know it’s happening. When you have given your life to someone, to please that person, then the only thing you are living for is to make that person happy and you put your happiness on the side, that’s how he did it” and “He always got his way”.
|9Mrs. Brehm first left the matrimonial home on July 27th, but stayed gone less than 24 hours. She traveled to her daughter’s house, north of the lake. When asked why she returned to her home to be with Mr. Brehm, she stated she returned home because she felt sorry for Mr. Brehm. She stated in her testimony that he asked her to return, that he controlled and manipulated her until she went home. Based on Mrs. Brehm’s own testimony, she was raised to place her husband’s happiness before hers, and she always tried to make the best of the situation. However, we find no jurisprudential authority imputing fault to one spouse for the other spouse’s voluntary submissiveness, absent a clear pattern of abuse, which this record does not show.
Unlike other states, this state does not recognize irreconcilable differences as a grounds for a no-fault divorce. Mutual fussing and bickering do not rise to the level of fault to excuse one spouse’s abandonment of the marital home. Bernard, v. Bernard, 554 So.2d 818 (La.App. 5 Cir.1989). Nor does unhappiness, dissatisfaction, or incompatibility between spouses, however intense, constitute lawful cause to withdraw from the common dwelling. Skannal v. Skannal, 25, 467 (La.App. 2 Cir. 1/19/94), 631 So.2d 558.
We must next consider whether Mrs. Brehm was experiencing a mental illness or disease which would excuse her leaving the matrimonial home. Actions that would normally be construed as fault contributing to a divorce are excused when involuntarily induced by a preexisting mental illness. Kaplan v. Kaplan, 453 So.2d 1218, 1221 (La.App. 2d Cir.1984), writ den. 458 So.2d 484 (La.1984). However, the mental illness must be shown to have caused the behavior which would otherwise constitute marital fault. Credeur v. Lalonde, supra.
Mrs. Brehm offers the testimony of Dr. Jordan. Dr. Jordan testified that Mrs. Brehm left the matrimonial home to preserve her own emotional stability and sanity- _jipDr. Jordan diagnosed Mrs. Brehm as having somatic disorders and martial maladjustment. The somatic disorders were seemingly physical manifestations of her unhappiness. Martial maladjustment and unhappiness are not grounds for abandonment. We, therefore, find that Mrs. Brehm has not *382 proven that she suffered from a mental illness which would have legally excused her abandonment.
We reverse the trial court’s finding that Mrs. Brehm was free from fault.
POST-SEPARATION FAULT
Next, Mr. Brehm argues that the trial court should have found Mrs. Brehm guilty of post-separation fault: specifically, her acts of breaking the family china and setting her wedding dress on fire in the front yard.
Post-separation fault on the part of one spouse will preclude that spouse from receiving permanent alimony, but in order to preclude an award of permanent alimony, the post-separation fault must be of a magnitude that it would, if standing alone, constitute grounds for divorce. Billingsley v. Billingsley, 618 So.2d 562 (La.App. 2 Cir.1993).
Approximately one month after the initial separation, Mrs. Brehm notified Mr. Brehm that she was returning to the home to retrieve her clothing and some personal belongings. Prior to her arrival, Mr. Brehm divided up the china and crystal so that she could take her half, and he photographed all the clothing in her dressers and closet. When Mrs. Brehm arrived, she carried out the china and crystal, which she then dropped on the sidewalk in front of the home. At some point she mutilated several family pictures by cutting Mr. Brehm out of. the pictures. She found her wedding dress and attempted to set it on fire in the front yard, while Mr. Brehm and | nat least one of their daughters watched. She then dragged the dress to her sister’s house two blocks away, where the fire was put out.
Mrs. Brehm testified that she set the wedding dress on fire because of all her negative feelings regarding her marriage. Dr. Jordan testified that the above acts were symbolic acts regarding her anger and sense of futility about her marriage, and were essentially symbolic acts of wanting to end the relationship. Both the doctor and Mrs. Brehm testified that her acts were not committed with the intent to cause hurt to Mr. Brehm, but were rather a breakdown on her part caused by her anger and extremely negative feelings. The doctor pointed out that Mrs. Brehm destroyed items that belonged to her, not to Mr. Brehm. In the case of the wedding dress, that item is one that many women form a strong sentimental attachment to that men do not. Had she wanted to hurt Mr. Brehm, the doctor said it would have been more likely that she would have destroyed items that belonged solely to him.
We find that Mrs. Brehm’s acts do not constitute post-separation fault. They were not committed with the purpose of humiliating or hurting Mr. Brehm. Nor do we find that these acts, on their own, are of such a magnitude that they would constitute grounds for divorce.
Accordingly, we reverse the trial court’s judgment, and find that Mrs. Brehm’s abandonment of the matrimonial domicile constituted legal fault, precluding her from receiving permanent alimony. The parties are to bear their own costs of this appeal.
REVERSED.

. This court originally dismissed the appeal of the judgment on fault only, finding that this judgment was a partial final judgment, and therefore unappealable. This court remanded for a determination of necessitous circumstances. We granted rehearing to consider the merits upon notification by the parties that the trial court had determined the issue of necessitous circumstances. This opinion addresses the issue of fault only.

. Additionally, as noted above, Mrs. Brehm did not appeal the trial court's judgment which found Mr. Brehm free from fault.